Leo J. HUGHES, Plaintiff,

v.

**FORD MOTOR CREDIT COMPANY** and Aclin Ford Co., Inc., Defendants.

E. H. HOGAN, Plaintiff,

v.

**CONWAY TRACTOR AND IMPLEMENT COMPANY** and Allis-Chalmers Credit Corporation, Defendants.

**Nos. LR–72–C–258, LR–73–C–17.**

United States District Court,
E. D. Arkansas, W. D.

June 8, 1973.

Donald J. West, of Pope, Pratt, Shamburger, Buffalo & Ross, Little Rock, Ark., for plaintiff Hughes.

Griffin Smith, Little Rock, Ark., for defendants Ford Motor and Aclin Ford.

Ed Bethune, Searcy, Ark., for plaintiff E. H. Hogan.

Don F. Hamilton, of House, Holmes & Jewell, Little Rock, Ark., for defendants Conway Tractor and Allis-Chalmers.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

These two cases present a common question of federal pendent jurisdiction in litigation arising under the Federal Truth in Lending Act. Act of May 29, 1968, P.L. 90–321, 82 Stat. 146, 15 U.S. C.A. § 1601 et seq. Particularly involved here are the disclosure requirements appearing in Chapter 2 of the Act, 15 U.S.C.A., §§ 1631–1641, as implemented by Regulation Z promulgated by the Federal Reserve Board. 12 C.F. R. Part 226.

Primary jurisdiction of both cases is not questioned and is properly invoked under the provisions of section 130 of the Act. As to the pendent claims to be mentioned, it should be said at the outset that in neither case does there exist complete diversity of citizenship between the parties and neither case involves an amount in controversy in excess of $10,000, exclusive of interest and costs.

Case No. 258, in which Leo J. Hughes is plaintiff and Ford Motor Credit Company and Aclin Ford Co., Inc. of Jacksonville, Arkansas, are the defendants, is before the Court on the motion of both defendants to dismiss the complaint as amended for failure to state a claim upon which relief can be granted. That motion will be treated as one for summary judgment.

Case No. 17, in which E. H. Hogan is the plaintiff and Conway Tractor and Implement Company and Allis-Chalmers Credit Corporation are the defendants, is before the Court on the motion of Allis-Chalmers to dismiss Count II of the complaint. No appearance has been entered or pleading filed by Conway Tractor and Implement Co., and the answer of Allis-Chalmers to Count I of the complaint suggests that its co-defendant is not a suable entity. Counsel for plaintiff has not responded to the motion to dismiss Count II and has not sought leave to amend either count as far as parties defendant are concerned.

Case No. 258 arises out of the fact that in November 1971 plaintiff purchased on credit from Aclin Ford Co. a 1972 Galaxie. The purchase was financed by Ford Motor Credit Co. The total purchase price of the car was $4,000; Hughes traded in an old car and received a credit of $450. He took out insurance, the premium for which was $151. He was required to assume liabil-

ity for an official fee of some sort which amounted to $1.25, so that the unpaid balance on the overall purchase price of the car was $3,702.25. Hughes financed this balance over a period of 36 months and incurred a finance charge of $597.59 based upon a true annual rate of interest of 10 percent which is the maximum permitted by Arkansas law. The pendent claim in that case is that due to an event or events that took place some two months after the sale plaintiff's contract became tainted with usury and is void under Arkansas law. That claim was not set forth in the original complaint and was brought into the case by amendment after the defendants had answered the original complaint and had attached to their answer as exhibits copies of contract documents disclosing the details of the original transaction.

Case No. 17 arises out of the fact that in December 1972 the plaintiff, E. H. Hogan, purchased on credit from Conway Tractor and Implement Co. of Faulkner County, Arkansas, a used rice combine. The transaction was financed by Allis-Chalmers Credit Corporation. Judging from Exhibit 1 to the complaint, the total price of the combine was $4,500. Mr. Hogan paid $2,000 down and financed the balance which was to be retired by two unequal payments, one falling due on December 1, 1973, and the other falling due on December 1, 1974. His finance charge was $316.50 and was said to have been calculated on the basis of interest at the rate of 10 percent per annum.

Count I of the complaint alleges that the seller violated the provisions of the Act by including "incorrect and unclear" figures on the credit documents prepared in connection with the sale and by allegedly failing to furnish plaintiff with a disclosure statement at the time of the allegedly imperfect disclosure and before the credit was extended as required by the Act and the Regulation.

The pendent claim in the case appears in Count II wherein it is alleged that plaintiff was induced to purchase the combine by means of false and fraudulent representations made by an agent of the seller and, further, that the finance charge made in connection with the transaction was usurious. In Count II plaintiff seeks rescission of the contract or, alternatively, that the entire purchase money security interest be declared wholly void for usury.

## I.

Section 121(a) of the Act provides that every creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Federal Reserve Board, to every person to whom consumer credit is extended and upon whom a finance charge is or may be imposed the information required by Chapter 2 of the Act.

Section 128(a), which is the section applicable to transactions of the type with which the Court is concerned, sets out in detail the items of information which must be disclosed. And section 128(b) provides that in general the disclosures must be made before the credit is extended "and may be made by disclosing the information in the contract or other evidence of indebtedness to be signed by the purchaser."

Section 130(a) provides, with certain exceptions, that any creditor who fails to make the required disclosures shall be liable to the debtor in an amount equal to twice the finance charge exacted, but not less than $100 nor more than $1,000, plus a reasonable attorney's fee.[1]

Section 130(b) permits a creditor in certain circumstances to avoid liability by making timely corrections of erroneous disclosures.

---

1. In his original complaint in No. 258 plaintiff sought damages amounting to $1,000 plus an attorney's fee. In Count I of the complaint in No. 17 plaintiff sought damages in the sum of $633 plus a fee.

Section 130(c) provides that a creditor may not be held liable under section 130(a) if he shows by a preponderance of the evidence that his violation was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

And section 130(e) provides that any action under the section "may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

## II.

In view of the provisions of section 130(e) there is no doubt that this Court has jurisdiction of the statutory claims put forward by the respective plaintiffs. However, in view of the absence of complete diversity and the requisite amounts in controversy in the respective cases, it is equally clear that this Court has no independent jurisdiction with respect to the claims of usury and fraud.

 Where, as here, a plaintiff joins with a claim properly cognizable in a federal court a claim with respect to which such a court does not have independent jurisdiction, it is said that the federal court has pendent jurisdiction of the second claim if: (1) it arises out of the same nucleus of operative facts as does the first claim; and (2) the claims are of such nature that a plaintiff ordinarily would be expected to try them both in the same proceeding. United Mine Workers v. Gibbs, 1966, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218; Wright, Law of Federal Courts, 2d Ed., § 19, p. 64. However, the question of whether existing pendent jurisdiction should be exercised in a given case is one that addresses itself to the discretion of the Court.

 The factors to be taken into account by the Court in determining whether to exercise pendent jurisdiction are set out in some detail in *Gibbs*, supra, 383 U.S. at 726–727, 86 S.Ct. 1130. Those factors include: considerations of judicial economy, convenience, and fairness to litigants; the desirability of a federal court avoiding unnecessary determinations of State law; the stage of the proceedings at which the federal claim is disposed of; and the relationship of the non-federal claim to the federal claim. As far as stage of proceedings is concerned, the Supreme Court said, "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (383 U.S. at 726, 86 S.Ct. at 1139.) The Court pointed out that the existence of pendent jurisdiction will ordinarily be resolved on the pleadings, but that the question of whether that jurisdiction should be exercised remains open throughout the litigation. (383 U.S. at 727, 86 S.Ct. at 1139.)

In Jordan v. Montgomery Ward & Co., D.C.Minn., 1970, 317 F.Supp. 948, plaintiffs filed a two count class action against the defendant. In the first count it was alleged that the defendant had violated provisions of Chapter 3 of the Act relating to credit advertising; in the second count it was claimed that certain acts of the defendant violated the usury laws of Minnesota. The District Court refused to exercise its pendent jurisdiction with respect to the non-federal claim set out in the second count of the complaint.[2]

 The Court recognizes that whether pendent jurisdiction should be

2. The District Court's disposition of the first count produced an interlocutory appeal which was decided by the Court of Appeals in Jordan v. Montgomery Ward & Co., 8 Cir., 1971, 442 F.2d 78. However, the action of the District Court in striking the second count of the complaint was not involved in that appeal.

exercised in Truth in Lending Act context is a question that must be answered ultimately on a case to case basis. However, the Court will take this opportunity to announce that as a matter of general policy it will be reluctant to exercise pendent jurisdiction in cases like these where the statutory claim on which primary jurisdiction is based is plainly insubstantial or without merit or where there is no real or substantial connection between the pendent claim and the deficiencies in disclosures alleged in support of the primary claim. And the Court would emphasize the fact that under section 130(e) of the Act the State courts having independent jurisdiction of the pendent non-federal claim also have concurrent jurisdiction of the federal statutory claim. In other words, this Court is not inclined to permit the Truth in Lending Act to be used simply as a means to obtain a federal forum for ordinary debtor-creditor controversies between citizens of the same State or not involving the jurisdictional amount prescribed by 28 U.S.C.A. section 1332 (a).

Having so stated its general policy, the Court will now turn to the specific motions before it.

### III.

■ As far as the Hughes case is concerned, plaintiff has admitted that the exhibits to the defendants' answer are true copies of documents bearing his genuine signature. And the Court finds that the disclosures made in those documents are adequate to satisfy the requirements of the Act and of the Regulation. The Court rejects plaintiff's argument that the initial disclosures were "invalidated" by later developments relating to the cancellation of his automobile insurance. Section 124 of the Act provides specifically that if information disclosed in accordance with the Act is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of the Act.

It thus appears that the statutory claim of plaintiff in No. 258 is entirely without merit. And the Court in the exercise of its discretion has determined that the pendent claim of usury should not be entertained. If plaintiff desires to pursue that claim, he may do so in an appropriate State court.

The usury claim arises out of the fact that plaintiff's insurance was cancelled in January 1972, and he says that he did not learn of the cancellation until November 16, 1972, which was six days after the suit was filed. In his amendment to his complaint in which the usury claim was first asserted plaintiff alleges that the defendants never made a refund of the unused premium and continued to charge plaintiff for the use of the money, and thereby violated the usury laws of Arkansas.

As has been seen, the federal claim has been found to be without merit in advance of any trial or hearing, and it is clear that there is no proximate connection between the surviving claim of usury and the disclosures made in connection with the original sale of the car.

An order will be entered dismissing both the original complaint and the amendment but without prejudice to the right of plaintiff to prosecute his usury claim in the State courts.

### IV.

A somewhat different situation is presented in the Hogan case.

■ On the record before it the Court cannot say as a matter of law that the statutory claim is insubstantial or

without merit, and the Court observes that Allis-Chalmers in its answer to Count I has pleaded certain affirmative defenses. The Court has examined the copies of documents attached to the complaint as exhibits and finds that some of the figures appearing on Mr. Hogan's sales contract are patently incorrect.

As heretofore indicated, the principal balance financed by Mr. Hogan was $2,500; a finance charge of $316.50 was computed, which would make a total of $2,816.50, and that figure is one of those that appears in the contract. However, the payment schedule called for Hogan to make one payment of $1,397.50 and another payment of $1,419.00, and when those two figures are added together, the total is $4,816.50 which is the basic $4,500 price of the combine plus the $316.50 carrying charge.

As to the connection between the primary claim and the pendent claim, while it is somewhat hard to see how misrepresentations about the age and history of the machine in question relate to the disclosures on the sales contract, the Court cannot say with certainty at this point that there is no connection, nor can the Court say that the figures appearing on the contract are not or may not be related to the usury claim.

In such circumstances the motion of Allis-Chalmers to dismiss Count II will be overruled for the time being, and that defendant will be allowed ten days within which to answer that Count. When the case has been more fully developed, Allis-Chalmers may be in a position to urge again that Count II be dismissed.

In view of the fact that Allis-Chalmers has alleged that the Conway Tractor and Implement Co. is a partnership, it might be a wise idea for counsel for the plaintiff to look into the matter, and if he desires to amend with respect to parties defendant, he may do so within the next 20 days.

Appropriate orders will be entered.