Gennaro J. SOLEVO

v.

ALDENS, INC.

No. N-74-313.

United States District Court,
D. Connecticut.

May 29, 1975.

**862**

Jonathan J. Einhorn, New Haven, Conn., for plaintiff.

William J. Egan, New Haven, Conn., for defendant.

MEMORANDUM OF DECISION ON
DEFENDANT'S MOTIONS

NEWMAN, District Judge.

This case presents the question of the propriety of exercising pendent jurisdiction over a usury claim arising under state law, when the primary claim is based on alleged violations of federal truth-in-lending law. The suit results from an open-end credit agreement between plaintiff, a citizen of the State of Connecticut, and defendant, an Illinois corporation. Count I of the complaint charges the defendant with failure to make disclosures required by the truth-in-lending laws of the United States, 15 U.S.C. § 1601 *et seq.*, and of the State of Connecticut, Conn.Gen.Stat. § 36–393,

*et seq.*, as incorporated into federal law, 15 U.S.C. § 1633, 12 C.F.R. § 226.12(c). Count II alleges in a pendent claim that the agreement imposes a rate of interest in excess of that permitted under Connecticut law, Conn.Gen.Stat. §§ 37–4, 42–133c. Defendant has moved to dismiss Count I for lack of subject matter jurisdiction, and Count II for failure to state a claim upon which relief may be granted. It also has moved to strike one paragraph of the complaint, and for a more definite statement of the truth-in-lending claim.

Plaintiff maintains that jurisdiction of the truth-in-lending claim is provided by 15 U.S.C. § 1640(e), which gives to federal district courts and to "any other court of competent jurisdiction" subject matter jurisdiction of federal truth-in-lending claims. Defendant premises its motion to dismiss this count of the complaint on plaintiff's reliance on Connecticut's truth-in-lending laws. While the complaint charges failure to comply with both state and federal disclosure requirements, Connecticut-regulated transactions have admittedly been given an exemption from federal truth-in-lending law, see 15 U.S.C. § 1633.

Defendant questions, in another context, whether this transaction is actually governed by Connecticut law, see discussion of Count II of the complaint, *infra.* If it is not a Connecticut transaction, then plaintiff's truth-in-lending claim is purely a question of federal law, and no question of jurisdiction under § 1640(e) arises. If it is Connecticut-regulated, there nonetheless remains a federal cause of action for violations of the state disclosure requirements as incorporated into federal law, 12 C.F.R. § 226.12(c); *Wolf* v. *The H. P. Hallock Co.,* Civil No. 15,675 (D.Conn. Sept. 4, 1973); *Ives* v. *W. T. Grant Co.,* Civil No. 15,125 (D.Conn. Feb. 16, 1973). Whether judged by state or federal standards, plaintiff's truth-in-lending claim is cognizable in this Court.

Count II of the complaint alleges violations of Connecticut's usury

statutes, Conn.Gen.Stat. §§ 37–4, 42–133c. Although standing alone such a claim is not cognizable in this Court, plaintiff would append this state cause of action to his federal truth-in-lending suit. When a plaintiff's state and federal claims derive from a "common nucleus of operative fact," and "are such that he would ordinarily be expected to try them all in one judicial proceeding," then if the federal court finds the federal claim to be "substantial," it may take pendent jurisdiction over the state cause of action, *United Mineworkers of America* v. *Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). No pendent jurisdiction of a usury claim exists, though, if the truth-in-lending claim is "entirely without merit," *Hughes* v. *Ford Motor Credit Co.,* 360 F.Supp. 15 (E.D.Ark.1973), or if there is an insufficient factual relationship between the alleged truth-in-lending violation and plaintiff's usury claim, see *Jordan* v. *Montgomery Ward & Co.,* 317 F.Supp. 948 (D.Minn.1970), *aff'd in part, rev'd in part on other grounds,* 442 F.2d 78 (8th Cir. 1971); *cf. Spens* v. *Citizens Fed. Savings & Loan Assn. of Chicago Hts.,* 364 F.Supp. 1161 (N.D. Ill.1973). At this early stage, however, neither the substantiality of the truth-in-lending allegations nor their factual relationship to the usury claim can be determined.

■ Even assuming that both these criteria are met, there are nonetheless reasons for declining to take jurisdiction of Count II. *Gibbs* makes clear that even where the power to exercise pendent jurisdiction exists, a court may, in its discretion, decline to do so. The Supreme Court reasoned that since the justification for the doctrine of pendent jurisdiction

> lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hestitate to exercise pendent jurisdiction over state claims . . . . 383 U.S. at 726, 86 S.Ct. at 1139.

Respect for judicial economy requires that plaintiffs with state and federal claims be allowed to raise both in a single forum. Where the state forum can hear only the state claim, then pendent jurisdiction is generally appropriate. Where both state and federal issues may be litigated in the state court, as § 1640(e) allows here, considerations of judicial economy are less pressing, and only a general preference for a federal forum for the federal cause of action, a policy arguably expressed in the statute giving federal jurisdiction to the primary claim, would dictate the exercise of pendent jurisdiction. See Hart & Wechsler, *The Federal Courts and the Federal System,* 2d ed. at 923.

In cases such as this, however, there is good reason not to credit such a preference. *Gibbs* recognizes the danger that a litigant may invoke the doctrine of pendent jurisdiction in order "to impose upon [the court] what is in effect only a state law case." 383 U.S. at 727, 86 S.Ct. at 1140. While it would perhaps be unfair to characterize the usury claim as "the real body" of the case, and the truth-in-lending claim as only its "appendage," *id.,* the danger here is a comparable one, and in some respects more serious. For if pendent claims are routinely allowed in truth-in-lending cases, while a usury claim may not become the dominant part of any single federal suit, still such state causes of action may come to be the dominant part of federal court dockets, at least in districts such as this where truth-in-lending suits proliferate.

That such a projection is not mere conjecture is illustrated by the situation in the Northern District of Georgia, where 292 truth-in-lending cases were filed in the first half of fiscal year (FY) 1974 and 349 in the first half of FY 1975. *Semi-Annual Report of the Director of the Administrative Office of the United States Courts* 23 (1975). Though the District of Connecticut had only two such cases in the first six months of FY 1972 and five in the first

six months of FY 1973, already our truth-in-lending filings have climbed to second in the nation, with 39 in the first half of FY 1974 and 78 in the first half of FY 1975, *id.*

■ While some notions of judicial economy may be served by the exercise of pendent jurisdiction in this rapidly growing number of cases, the results are more likely to be counterproductive. Like the Court in *Hughes* v. *Ford Motor Credit Co., supra,*

> this Court is not inclined to permit the Truth in Lending Act to be used simply as a means to obtain a federal forum for ordinary debtor-creditor controversies between citizens of the same State or not involving the jurisdictional amount prescribed by 28 U.S.C. § 1332(a). 360 F.Supp. at 19.

Congress could not have intended such a result, and *Gibbs* gives federal district courts the discretion necessary to avoid it. Therefore, unless special circumstances warrant otherwise, this Court will refuse to take jurisdiction of state claims appended to federal truth-in-lending actions. Plaintiffs who wish to bring all their claims in a single forum may take advantage of the provision for concurrent jurisdiction in 15 U.S.C. § 1640(e) by pursuing those claims in state court.

Here no special circumstances warrant the exercise of pendent jurisdiction. In fact, the state claim raises special problems that, apart from the general considerations that counsel against exercise of pendent jurisdiction in any truth-in-lending action, demand that its invocation in this particular case be refused. Defendant pinpoints those problems in his motion to dismiss Count II.

Whether this agreement is to be tested by federal or state truth-in-lending standards is likely to make little substantive difference to decision on Count I, since § 1633 permits an exemption only where the two impose "substantially similar" disclosure requirements. But whether Connecticut law governs this transaction is a crucial question for plaintiff's usury claim. It is undisputed that the finance charges imposed by the agreement, 1.75% per month or 21% annually on balances of up to $350, exceed those permitted by Connecticut law. The general usury statute, Conn.Gen. Stat. § 37-4, forbids rates of interest higher than 12% per annum, and another Connecticut statute, § 42-133c, prohibits charges applied on an open-end credit plan in excess of one percent per month. Defendant argues, however, that this transaction is governed not by the laws of Connecticut, but by those of Illinois, which permit monthly charges on open-end credit accounts of up to 1.8%, Ill.Rev.Stat. Ch. 121½ § 528. It therefore moves to dismiss the usury count for failure to state a claim upon which relief may be granted.

■ In arguing that this transaction is regulated by the laws of Illinois, defendant relies in part on the final paragraph of the credit application, which states that

> This Agreement shall be deemed a contract made in Illinois and I [the applicant] acknowledge and agree that the laws of the State of Illinois shall govern all credit terms and our respective rights and duties under this Agreement and its enforceability.

The parties to an agreement are generally entitled to stipulate as to the place whose law is to govern their transaction. *Pollack* v. *Danbury Manufacturing Co.,* 103 Conn. 553, 557, 131 A. 426 (1925); *International Union* v. *General Electric Co.,* 148 Conn. 693, 699, 174 A.2d 298 (1961). As a leading usury case indicates, however, they may do so only when the situs fixed by the agreement "has a natural and vital connection with the transaction." *Seeman* v. *Philadelphia Warehouse Co.,* 274 U.S. 403, 408, 47 S.Ct. 626, 628, 71 L.Ed. 1123 (1927); see Conn.Gen.Stat. § 1-105.

■ Here the connection of the transaction to the State of Illinois is substantial. Illinois is the location of

defendant's sole place of business. It is the state in which the contract was made, for that is where plaintiff mailed his completed application and where defendant accepted it. It is also the state in which defendant's performance was due, for though shipped to Connecticut, all goods plaintiff ordered were to be sent F. O. B. Chicago, see Conn.Gen.Stat. § 42a–2–319. Finally, it was the state in which plaintiff was to make all payments due on his account. Therefore the parties could validly stipulate that Illinois law would govern their transaction.

In fact, had the parties made no stipulation, Connecticut's conflict of laws rules would have dictated the same result. In *Santoro* v. *Osman*, 149 Conn. 9, 174 A.2d 800 (1961), the defendant corporation alleged plaintiff's usury in defense to an action on a promissory note. Though the corporation could have raised such a defense under Connecticut law, New York made usury a defense available only to natural persons. Because the note was executed and payable in that state, the Connecticut court applied New York law and held the defense unavailable.

*Pioneer Credit* v. *Radding*, 149 Conn. 157, 176 A.2d 560 (1961), involved a promissory note that had been signed in Connecticut, but that became effective only upon its delivery in Massachusetts. While the rate of interest specified in the note was usurious under Connecticut law, the Court followed *Santoro* in ruling that Massachusetts' more permissive usury law applied. The agreement in this case, like those in *Santoro* and *Pioneer Credit*, was made in another state and required that plaintiff make payments there. As such, it is also regulated by that state's law.

█ Plaintiff maintains, though, that even if the transaction is one governed by Illinois law, because the rate of interest it imposes on plaintiff so exceeds the rate permissible in Connecticut, this Court should decline to follow the usual conflicts rules. It is this contention that is most troublesome. Connecticut courts will, of course, not enforce an agreement permissible under the laws of another jurisdiction if it is nonetheless contrary to the public policy of this state, *Ciampittiello* v. *Campitello*, 134 Conn. 51, 54 A.2d 669 (1947), but whether this is such an agreement is not at all clear.

Both *Santoro* and *Pioneer Credit* indicate that at least in some situations Connecticut's public policy is not contravened by enforcing a foreign agreement simply because it would be usurious if judged by Connecticut law. In *Santoro*, the Court of Common Pleas had refused to enforce the New York promissory note in its belief that to do so would violate public policy. The Supreme Court of Connecticut reversed. While Conn. Gen.Stat. § 37–8 precluded actions to recover principle or interest on a loan "prohibited by" Connecticut law, this was not such a loan. Because it was a New York transaction, "the loan was not 'prohibited by' any of our usury statutes," 149 Conn. at 13, 174 A.2d at 802, and apparently for that reason did not offend Connecticut's public policy. In *Pioneer Credit* the Court again relied on *Santoro* in holding that, "Since the note was not illegal under the laws of Massachusetts, . . . it is enforceable in Connecticut." 149 Conn. at 160, 176 A.2d at 561. Both cases suggest, then, that only those foreign agreements which are usurious under the foreign law that governs them can offend the public policy of the State of Connecticut.

Plaintiff urges that while this reasoning may extend to situations in which a violation of § 37–4 (the general usury statute) is charged, § 42–133c reflects a special state concern for consumers that requires a different result. The latter statute is directed exclusively toward consumer sales, he notes, and "there exists in Connecticut a very strong public policy in favor of protecting purchasers of consumer goods." *Fairfield Credit* v. *Donnelly*, 158 Conn. 543, 551, 264 A.2d 547, 551 (1969).

A Connecticut court might well decide that the interest charges permitted by the usury statutes of another state violate the public policy of this state, and it might more easily reach that conclusion where those charges are imposed as part of a consumer transaction. But no state court has yet done so. While this case involves charges far in excess of those Connecticut allows, it would be inappropriate for a federal court to be the first to make such a determination of Connecticut's public policy.

As *Gibbs* soundly advises district courts in the exercise of their power of pendent jurisdiction,

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a sure-footed reading of applicable law. 383 U.S. at 726, 86 S.Ct. at 1139.

See also *Pride* v. *Community School Board of Brooklyn, N. Y. School District #18,* 482 F.2d 257 (2d Cir. 1973); *Winnick* v. *Manning,* 460 F.2d 545 (2d Cir. 1972). Whether this transaction offends the public policy of Connecticut is not only a novel issue, but also one raising policy questions peculiarly for state court consideration. For that reason, and because pendent jurisdiction is generally inadvisable in a truth-in-lending context in this District, this Court, *sua sponte,* declines to take jurisdiction of Count II of plaintiff's complaint.[1]

Accordingly, defendant's motion to dismiss Count I of the complaint is denied, and its motion to dismiss Count II of the complaint is granted. The motion for a more definite statement as to Count I is denied without prejudice to defendant's right to procure the information it seeks through discovery. The motion to strike is denied, since it attacks allegations that may bear on the litigation and that are in no way prejudicial to the defendant.

1. Defendant also argues that application of Connecticut's usury law to this transaction would violate due process and is prohibited by the Commerce Clause of the Constitution.

Since Count II of the complaint is to be dismissed, it is unnecessary to reach these questions. But *cf. Aldens, Inc.* v. *Packel,* 379 F.Supp. 521 (M.D.Pa.1974).