Robert WHITMAN

v.

The CONNECTICUT BANK AND TRUST COMPANY and Interbank Card Association.

Civ. No. H–253.

United States District Court, D. Connecticut.

Sept. 23, 1975.

Katalin Roth, New Haven, Conn., Louis I. Parley, W. Hartford, Conn., for plaintiff.

H. Meade Alcorn, Jr., Ralph G. Elliot, William G. DeLana, Philip S. Walker, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

Defendants have filed this motion to dismiss plaintiff's claim for lack of subject matter jurisdiction, lack of personal jurisdiction over defendant Interbank Card Association (Interbank), and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b) Fed.R.Civ.P. Due to the need for factual determinations prior to decision on two of the grounds advanced, each party has been allowed an opportunity to discover and present relevant information underlying these claims. The motion on those grounds may now be treated as a motion for summary judgment. Rule 12(c) Fed.R.Civ.P.

Robert Whitman, the plaintiff in this action, has filed a claim on his own behalf and on behalf of all persons similarly situated [1] against the defendants Connecticut Bank and Trust Company (CBT) and Interbank, alleging violations of the Federal Truth in Lending Act, 15 U.S.C. §§ 1601–65; its companion legislation in this state, the Connecticut Truth-in-Lending Act, Conn.Gen. Stat.Ann. §§ 36–393 to 417 (1975 Supp.); and the Connecticut Uniform Commercial Code, Conn.Gen.Stat.Ann. § 42a–2–302.

Plaintiff alleges that the defendants failed to disclose to him conversion and/or service charges [2] which he accrued when he used his Mastercharge credit card to purchase goods and services while traveling in Europe during 1972–73.

Defendants originally challenged the complaint on four grounds: 1) Interbank denied the existence of personal jurisdiction; 2) Interbank and CBT denied the existence of subject matter jurisdiction under the Truth in Lending acts; 3) Interbank denied that it is subject to either Truth in Lending act as it is not a "creditor" as defined in both acts; and 4) both defendants challenged the legal sufficiency of plaintiff's claim under the Uniform Commercial Code.

In an earlier ruling, dated February 28, 1975, this court determined that it had personal jurisdiction over the defendant Interbank. Decision on the other claims was delayed to await the result of an appeal then pending in the Court of Appeals, which turned on the subject matter jurisdiction issue. Since that court has now determined that question adversely to the defendants, *Ives v. W. T. Grant Co.*, 522 F.2d 749 (2d Cir. 1975), it is now appropriate to dispose of the remainder of the motion.

#### I. *The Subject-Matter Jurisdiction Claim*

Under §§ 105 and 123 of the Truth in Lending Act, 15 U.S.C. §§ 1604 and 1633, the Federal Reserve Board is empowered to exempt credit transactions in states with similar legislation from the requirements of the Federal Act.[3] Transactions in Connecticut were exempted by the Board in 1970, with the proviso that the exemption should not be construed to affect the concurrent jurisdiction of federal and state courts.[4]

The defendants contend that under the statute, any exemption by the Board necessarily exempted the transactions from federal court jurisdiction as well. In *Ives, supra,* the Court of Appeals held that federal courts retain subject matter jurisdiction over transactions which occur in states which have been exempted by the Federal Reserve Board. The court held that the exemption applies only to federal administration of the statute and that it does not pertain to the civil liability provisions in § 130 of the Act, 15 U.S.C. § 1640. As a result, the defendants' motion to dismiss based on this ground must be denied.

The question still remains, however, whether the plaintiff has stated a sufficient claim under the Truth in Lending legislation against Interbank.

#### II. *Applicability of Truth in Lending to Defendant Interbank*

By its terms, section 130 of the Act, which provides for civil liability, covers only the acts and omissions of "credi-

---

1. Action on plaintiff's motion to certify a class pursuant to Rule 23(a) and (b) has been held in abeyance pending the decision of this motion.

2. The precise nature of the charges in question have yet to be disclosed to the court.

3. 15 U.S.C. § 1633 states:
   "The Board shall by regulation exempt from the requirements of this part any class of credit transactions within any State if it determines that under the law of that State that class of transactions is subject to requirements substantially similar to those imposed under this part, and that there is adequate provision for enforcement."

4. 12 C.F.R. § 226.12 Supp. III(e), 35 Fed. Reg. 11992 (July 25, 1970).

tors." The Connecticut statute is similarly limited.[5] "Creditor" is defined in both statutes in an ambiguous fashion:

"The term 'creditor' refers only to creditors who regularly extend, or arrange for the extension of, credit for which the payment of a finance charge is required, whether in connection with loans, sales of property or services, or otherwise. The provisions of this subchapter apply to any such creditor, irrespective of his or its status as a natural person or any type of organization."[6]

Interbank denies that it ever extends consumer credit, and plaintiff does not seriously dispute this contention. The argument centers around the phrase "arrange for the extension of credit;" for if plaintiff can prove that Interbank regularly "arranges for the extension of credit," Interbank would be subject to the provisions of the act.

"Arrange for the extension of credit" is not defined in either statute, and the cases which have interpreted it to this point have dealt almost exclusively with the relationship between a credit seller and the party to whom that seller regularly assigns his commercial paper. *See, e. g., Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928 (E.D.La.), *aff'd,* 500 F.2d 1182 (5th Cir. 1974); *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955 (N. D.Ill.1972). That type of arrangement does not accurately reflect the relationship between the plaintiff and Interbank or between Interbank and CBT. It is undisputed that Interbank has had no direct relationship with the plaintiff, it was never a party to his debt and it never sold him any goods or services which were financed by another creditor.

"Arrange for the extension of credit," however, is a broad enough term to encompass more than the regular assignment of commercial paper. In Regulation Z, the Federal Reserve Board, whose expertise in these matters is enti-

tled to great deference, *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 365–66, 93 S.Ct. 1652, 36 L. Ed.2d 318 (1973); *Ives v. W. T. Grant Co., supra,* 522 F.2d at 755; has attempted a further definition:

" 'Arrange for the extension of credit' means to provide or offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit receives or will receive a fee, compensation, or other consideration for such service or has knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit. It does not include honoring a credit card or similar device where no finance charge is imposed at the time of that transaction." 12 C.F.R. § 226.2(f).

Under this definition there are two ways an individual can arrange for the extension of credit. He can either offer the credit and receive a fee, or he can know of the terms and prepare the documents.

In order to prevail on this motion for summary judgment, Interbank must be able to convince this court on the basis of material submitted, that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Rule 56(c) Fed.R. Civ.P. The affidavits and materials submitted by the moving party must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cali v. Eastern Airlines, Inc.,* 442 F.2d 65 (2d Cir. 1971). It is clear from the materials submitted to date that Interbank has failed to sustain its burden on this issue.

---

5. Conn.Gen.Stat.Ann. § 36–407 (1975 Supp.).

6. 15 U.S.C. § 1602(f); Conn.Gen.Stat.Ann. § 36–393(e) (1975 Supp.).

■ It is undisputed that Interbank is responsible for the nationwide advertising, in publications and on television, of the Mastercharge credit card. In 1972, the latest figures available to the court, Interbank and its subsidiary spent $3,525,033 on advertising.[7] The exact nature of this advertising and whether it constitutes an "offer to provide credit" is a material question which remains to be proven at trial.

In addition, Interbank receives "dues and assessments from member banks and licensees computed on the basis of card accounts having balances."[8] Since, by definition, a card account having a balance is one upon which credit has been extended, it appears that the fees which Interbank receives are directly related to the amount of credit extended by its member banks, at least arguably as a result of Interbank's advertising campaign encouraging the use of Mastercharge cards.

Interbank has therefore failed to foreclose the possibility that it is covered by the first part of the Federal Reserve Bank definition.

■ In addition there remains some question as to whether Interbank is not also covered by the second part of the definition. While Interbank denies knowledge of the contracts entered into by its member banks and their customers and denies supplying the member banks with forms, there remains to be discovered the exact nature of the relationship of the members of Interbank to that corporation. The members, including CBT, elect the directors of Interbank, and Interbank admits that its regulations and by-laws, which are not before this court, govern some unidentified aspects of the relationship between the member banks and their customers. This area, which has not to this point been clearly defined, sufficiently suggests factual issues open to the plaintiff at trial.

■ Finally, there is the point that the Federal Reserve Board definition, with its exclusions, while entitled to great deference, as mentioned above, is not binding on this court. This court is aware that:

> "The language employed [in the Truth in Lending Act] evinces the awareness of Congress that some creditors would attempt to characterize their transactions so as to fall one step outside whatever boundary Congress attempted to establish." *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 365, 93 S.Ct. 1652, 1658, 36 L.Ed. 2d 318 (1972).

■ Under the facts presented to this court, it is clear that the plaintiff could not have obtained the extension of credit from CBT while he was in Europe without the services of Interbank. It is undisputed that CBT had no contractual relationship with the European banks which forwarded the charge slips for payment. The exchange was worked through Interbank and according to its regulations and by-laws. Furthermore, all parties to the transaction relied on the current validity of the plaintiff's charge card, a fact that could be confirmed only by reference to a list of restricted or revoked cards, a service performed for a fee by Interbank for its members. In addition, the merchants in Europe who accepted the card in payment for the goods and services received by the plaintiff would not have done so but for the promise by CBT to make payment on slips presented to it: a promise made to Interbank and not to them directly. Under a causation analysis, it is clear that Interbank was a necessary party to the extension of credit in the alleged instances by CBT to the

---

7. Plaintiff's Memorandum of Law in Support of Personal Jurisdiction Over Defendant Interbank, App. I.

8. Defendant Interbank's Reply Memorandum to Plaintiff's Memorandum In Opposition to Defendant's Motion to Dismiss, at 12.

plaintiff. Whether or not this will be sufficient to amount to "arranging for the extension of credit" will depend on a greater factual exposition which can best be achieved by a full "ventilation of the facts" at trial. *Cf. Gumer v. Shearson, Hamill*, 516 F.2d 283 (2d Cir. 1974); and *see also Mourning v. Family Publications Service, Inc., supra*, 411 U. S. at 378, 93 S.Ct. 1652 (Douglas, J., concurring). For these reasons the defendant Interbank's motion for summary judgment on this ground must also be denied.

### III. *The Unconscionability Claim*

Finally, both defendants challenge the legal sufficiency of plaintiff's pendent state law claim in a motion to dismiss pursuant to Rule 12(b)(6) Fed.R.Civ.P.

Conn.Gen.Stat.Ann. § 42a–2–302, the "unconscionability" provision of the Uniform Commercial Code, expressly allows a court to "refuse to enforce" a contract or clause which it finds would lead to an unconscionable result.[9] The statute carries no provision for damages; the remedy it provides is express. No Connecticut court has awarded damages for violation of the statute although it has been applied in Connecticut. *Fairfield Lease Corp. v. Pratt*, 6 Conn. Cir. 537, 278 A.2d 154 (1971). Courts in other jurisdictions have in certain cases awarded punitive damages. *See* J. White & R. Summers, *Uniform Commercial Code* 130–33 (1972).

Defendants argue that the transactions in question are not "transactions in goods" and are therefore outside the scope of Article Two of the Code. *See* Conn.Gen.Stat.Ann. § 42a–2–102. Plaintiff in turn asks that this court hold that Connecticut would adopt the reasoning of the New Jersey Supreme Court and extend the coverage of the article to credit transactions tied in with a sale of goods. *See, e. g., Unico v. Owen*, 50 N. J. 101, 232 A.2d 405 (1967). Once again, however, they cite no Connecticut authority to support their position.

Plaintiff seeks also a declaratory judgment that the "practices" in question are unconscionable in violation of the Connecticut statute pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. Since however the statute in question is by its terms a defensive weapon for persons being sued on a contract, and since there is no claim on the contract in this matter, the relief desired by the plaintiff raises serious questions concerning its nature as an active "case or controversy." *Cf. Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).

In asking this court to decide a novel question of state law which turns not on interpretation but on a determination of state policy, the plaintiff has placed before us a question which, considering the issues in this case, is best left to the courts of Connecticut for a preliminary determination. *Cf. Solevo v. Aldens, Inc.*, 395 F.Supp. 861 (D. Conn.1975).

Pendent jurisdiction is subject to the sound discretion of the court, *United Mineworkers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *And see, Beacon Construction Co., Inc. v. Matco Electric Co., Inc.*, 521 F.2d 392 (2d Cir. 1975), at 397–398. In this case, because of the reasons expressed above and in accordance with the policy concerning the inadvisability of entertaining pendent

---

9. Conn.Gen.Stat.Ann. § 42a–2–302 reads:

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause so as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

claims in a Truth in Lending context in this district, as announced by Judge Newman in *Solevo, supra,* this court, sua sponte, declines to take jurisdiction of Count III of the plaintiff's complaint.

As a result, defendants' motions to dismiss Counts I and II of the complaint for lack of subject matter jurisdiction are denied; defendant Interbank's motion for summary judgment is denied; and defendants' motions to dismiss Count III of the complaint are granted.

So ordered.