**Mary Jane STUBBS, as Administratrix of the estate of Dawn Maxine Stubbs, Plaintiff,**

**v.**

**The UNITED STATES of America and Drill Sgt Sookdeo, Defendants.**

**No. LR–C–83–137.**

United States District Court, E.D. Arkansas, W.D.

March 13, 1984.

John Wesley Hall, Jr., Little Rock, Ark., for plaintiff.

Richard Pence, Asst. U.S. Atty., Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

Pending before the Court is defendants United States of America's and Sgt. Sookdeo's motion to dismiss or, in the alternative, for summary judgment. The Court will grant the defendants' motion and dismiss the case.

Rule 12(b) of the Federal Rules of Civil Procedure states, "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...." In considering the 12(b)6 issue, whether plaintiff stated a claim against the U.S.A. upon which relief can be granted, both parties' arguments were based entirely on the plaintiff's version of the facts; the Court did not need to look beyond the pleadings to decide the issue. Accordingly, even though both parties submitted material outside the pleadings and general order 13 statements, these submissions were excluded by the Court and do not have the effect of converting the motion to dismiss into a motion for summary judgment.

Plaintiff, the sister and administratrix of the estate of Dawn Stubbs, an enlisted woman who took her own life, seeks two million dollars in monetary damages from the defendants, the United States and Sergeant Sookdeo, the noncommissioned officer who was Dawn's drill sergeant, alleging wrongful death by sexual harassment and emotional distress.

Plaintiff's version of the facts, accepted as true for purposes of deciding defendants' motion, follow. Decedent, Dawn Stubbs, was a private in the U.S. Army stationed at Fort Leonard Wood, Missouri. On December 21, 1982, Drill Sgt. Sookdeo ordered her to the latrine for what she thought was some last minute cleaning before she left for the holiday. In the latrine, Drill Sgt. Sookdeo accosted decedent and said that if she would have sex with him, he would make the rest of her six-week stay there easier but if she refused it would be rougher on her. He also touched her breasts and genital area against her will. Decedent refused his advances.

The next morning Dawn Stubbs left the base to spend the holidays with her sister, Mary Jane Stubbs in Yell County, Arkansas. Dawn had been raped in 1979 and this incident coupled with the potential of another forced sexual encounter caused her tremendous anxiety. Throughout the holidays she talked repeatedly to her sister about the incident stating that she was extremely upset. Explaining that she felt trapped, she told her sister that if she complained, the Army would turn on her as a troublemaker.

Dawn was supposed to drive back to Fort Leonard Wood on January 3, 1983. About 5:00 p.m. that day, Mary Jane Stubbs saw that her sister was in the car clutching a shotgun. When she asked her what she was doing, Dawn replied that she was not going back to the Army and subject herself to the sexual harassment. Mary Jane tried to dissuade her sister, but to no avail. Dawn Stubbs killed herself with a shotgun blast to the head on the morning she was to return to Fort Wood.

## I. *Stubbs v. U.S.A.*

Plaintiff is proceeding against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and the pendent state claim.

The only waiver of sovereign immunity that will support the exercise of subject matter jurisdiction over plaintiff's claim against the United States is the Federal Tort Claims Act (FTCA). Therefore, the decisive issue before the Court is whether

the *Feres* doctrine bars plaintiff's cause of action under the FTCA. In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court held without dissent that "the government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159.

Plaintiff argues strenuously that the sexual advance by Sgt. Sookdeo that allegedly caused Stubbs' death cannot be categorized as "incident to service" and should not be barred by the *Feres* doctrine. To support the premise that Stubbs' death was not "incident to service" plaintiff relies on *Johnson v. United States*, 704 F.2d 1431 (9th Cir.1983). In *Johnson*, the Ninth Circuit Court of Appeals summarized the standard it uses to determine whether an activity is "incident to service" by stating, "[W]here there is no relevant relationship between the service member's behavior and the military interests that might be jeopardized by civil suits, the *Feres* doctrine cannot bar recovery." *Id.* at 1440.

Using the *Johnson* test, the plaintiff argues that the military's only interest in a case such as this is whether military discipline will be affected if a cause of action is permitted. Plaintiff argues that there is no relevant relationship between the maintenance of military discipline and the sexual advance perpetrated upon Dawn Stubbs, except that discipline was the vehicle by which Sgt. Sookdeo hoped to bring about the extortion of sex from the decedent.

However unjust it may appear on the surface, it is this very fact that completely bars Stubbs' action under the settled law in the Eighth Circuit. To summarize the consistent conclusions of the Eighth Circuit of Appeals when deciding *Feres* doctrine issues, it can be said that "incident to service" is given a broad interpretation and that if the plaintiff was, or could have been, subject to military discipline at the time of the tortious action then the action is barred. *Laswell v. Brown*, 683 F.2d 261 (8th Cir.1982); *Miller v. United States*, 643 F.2d 481, 490 (8th Cir.1981) (en banc); *Donham v. United States*, 536 F.2d 765 (8th Cir.1976), *aff'd sub nom, Stencel Aero Eng'r Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); *Chambers v. United States*, 357 F.2d 224 (8th Cir.1966).

The *Chambers* and *Miller* cases are particularly illustrative. In *Chambers*, the plaintiff's decedent drowned while swimming in a pool located on a military base. Finding that plaintiff's decedent was not on furlough status, the Court stated, "The significant fact here is that Chambers was assigned to duty at the Whiteman base, subject to the control of his military superiors." *Id.* at 229. Even though the airman in *Chambers* was not engaged in the performance of a military duty, he was subject to military control and this served as the basis of the court's finding that drowning in the base swimming pool was "incident to service."

The direct relationship between the possible impairment of military discipline and the finding that an activity is "incident to service" is firmly established in the Eighth Circuit's recent consideration of the *Feres* doctrine in *Miller v. United States*, 643 F.2d 481 (8th Cir.1980) (en banc). The facts of that case follow.

The accident that caused Private Miller's death occurred on June 23, 1977. On that day and at all relevant times he was a member of the United States Army stationed at Fort Wainwright, Alaska. On June 23 Private Miller was present and accounted for. After normal duty hours, with the knowledge and permission of his superior officers, he was employed for part-time work by one George Rodman, a supervisor for Northside-Danzi Construction Co. The work was done on the post and consisted of putting up scaffolding poles for on-base residential housing. Miller was not on leave or on pass, and could have been called to perform military duties at any time. The work had been going on for some time after normal duty hours each day.

Plaintiffs claim that Private Miller's death occurred when an aluminum ladder with which he was working came in contact with an uninsulated electric wire owned and controlled by the Department of the Army. They allege a number of particulars in which the United States (presumably acting through Miller's commanding officer) was negligent, including, for example, the failure to de-energize the electric line in question.

*Id.* at 490.

Initially, an Eighth Circuit panel, with one judge dissenting, found that Miller's death did not arise out of activities "incident to service":

PFC Miller was off duty, working in a civilian capacity at a part-time job for a private contractor. He was not performing any military duties or complying with any orders, nor was he taking advantage of a military privilege. This work was not something that a serviceman would ordinarily do while off duty. Even though he was on active duty and on a military base, he was exactly in the same position as any civilian employee of the private contractor might have been at that time and place.

PFC Miller had permission from his superior officers to work the part-time job. The Army "loaned" him out to a private contractor and, for all practical purposes, temporarily released their jurisdiction and control over him. At the time of the injury, the decedent was subject to the control and authority of his civilian employer—not his military superiors. The government takes a risk when it permits the members of the military to engage in outside activities totally unrelated to military life. If the government chooses to "loan" out the members of its military to civilian government employees, it must bear the risk of liability for resulting injuries. PFC Miller's death did not arise out of activities incident to service, and, therefore, the facts of the case do not fall within the rationale of *Feres.*

*Id.* at 486–87.

The case was reheard en banc and the Eighth Circuit's brief history of allowing servicemen and women who might be subject to military discipline to bring an action under the FTCA was ended. Acknowledging that there is an element of unfairness in denying Private Miller's survivors the rights that the family of a civilian employee working side by side with him would unquestionably have had, the Court of Appeals concluded nevertheless that his claim was barred by the *Feres* doctrine. *Id.* at 495.

The *Miller* court explained the necessity for establishing the *Feres* doctrine, "The fact is that the Supreme Court, in its construction of the Federal Torts Claim Act, has decided that full recovery in tort by individual service people must be subordinated to certain overriding policy considerations." *Id.* at 495. The overriding policy consideration receiving the full spectrum of judicial protection and non-intervention is military discipline. The Court reasoned that if they allowed Miller's suit against the military then "the conduct of Miller's military supervisor would be called in question in the civil courts, a circumstance that might well have [a] destructive effect on military authority and discipline . . . ." *Id.* at 494.

The court concluded that the circumstances leading to Miller's death arose out of life on a military post and were thus "incident to service." The action was barred.

As the Eighth Circuit found that a serviceman injured while under the control of a private employer presents the possibility of undermining military discipline, we can conclude that allowing a suit against an officer to question the interaction between that officer and his subordinate would surely present the same possibility. In explaining the *Feres* doctrine, it has been said that it is the threat of being sued, the suit and not the recovery, that would undermine the established relationship between enlisted military personnel and their superiors. *See Mondelli v. United States,* 711 F.2d 567, 568 (3rd Cir.1983); *Henninger v.*

*United States,* 473 F.2d 814, 815–16 (9th Cir.1973).

■ The Court concludes that allowing this suit in federal court would permit the civilian intervention in military relationships that the *Feres* doctrine was created to prevent. Accordingly, the Court finds that the alleged tortious conduct that precipitated Dawn Stubbs' death was "incident to service."

One could argue that finding "incident to service" does not resolve the issue because an important distinction can be made. The injuries in the cases discussed hereto were all the result of alleged military negligence, whereas the injury here was allegedly caused by the intentional acts of a military officer.

This was the argument raised in *Laswell v. Brown,* 683 F.2d 261 (8th Cir.1982). The plaintiffs alleged that the Army "killed" Laswell when they ordered him to attend and participate in three atomic test explosions. They assert that the *Feres* doctrine was intended to prevent liability for "common forms" of negligence, but should afford no protection to the Army in Laswell's situation due to the special and deliberate nature of the wrongful activity.

The Eighth Circuit Court of Appeals rejected this proposition. "The *Feres* doctrine does not distinguish between claims based on the alleged level of culpability of the tortfeasor; whether a negligent, a reckless or even an intentional tort is alleged." (citations omitted) The purposes for which *Feres* was created and continues to exist are equally advanced regardless of whether a simple negligence case is presented or the allegations constitute a more willful act." *Id.* at 265. This Court can, therefore, not avoid concluding that plaintiff's action is barred by the *Feres* doctrine.

Having so decided, the court need not address the jurisdictional question, nor the pendent state claim. *See United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The defendants' motion to dismiss for failure to state a claim is granted and the plaintiff's case against the U.S.A. is dismissed.

## II.   *Stubbs v. Sgt. Sookdeo.*

Sergeant Sookdeo is sued in both his official and individual capacities. Plaintiff is proceeding under the FTCA, the pendent state claim and a *Bivens* cause of action alleging that the sergeant's conduct constitutes sexual harassment which violates the due process clause of the Fifth Amendment to the U.S. Constitution.

■ The action against Sookdeo under the FTCA is barred by the same principle (lack of waiver of sovereign immunity) that bars plaintiff's suit against the United States. *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963); *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963).

Defendants argue that this Court lacks *in personam* jurisdiction over Sgt. Sookdeo for purposes of the *Bivens* action. Plaintiff asserts that the Arkansas "long arm statute," Ark.Stat.Ann. § 27–2502(C)(1)(c) and (f) (Repl.1979) provides the basis for personal jurisdiction over Sgt. Sookdeo.

Plaintiff's jurisdictional argument is based on her interpretation of the facts. She asserts that it is quite likely that Sgt. Sookdeo was aware decedent was going to leave the base for the holidays and that it is not "unreasonable" to assume that Sgt. Sookdeo knew that decedent was travelling to Arkansas. Further, plaintiff asserts that it was foreseeable to Sgt. Sookdeo that his conduct would affect decedent's emotional state wherever she would be.

Based on this "foreseeability" argument and the fact that the ultimate harm occurred in Arkansas, plaintiff asserts that it would not violate due process to make Sgt. Sookdeo defend in Arkansas. To support this theory, plaintiff analogizes to the nonresident vehicle owner statute, Ark.Stat. Ann. § 27–342.2 (Repl.1979) which provides for personal jurisdiction over a vehicle owner even though he has never been in Arkansas and was unaware his vehicle was in

Arkansas. Plaintiff argues that the United States Supreme Court has sustained the constitutionality of such nonresident vehicle statutes and that similar reasoning would sustain the assertion of jurisdiction over Sgt. Sookdeo.

The Court rejects these arguments and narrows the issue to whether the jurisdictional requirements of section 27–2502(C)(1)(c) have been met, or to paraphrase that section: Has Sgt. Sookdeo caused tortious injury by an act or omission in Arkansas?

Defendant Sookdeo has submitted an affidavit stating that he has never been physically present in Arkansas. He further states that he has not transacted any business in Arkansas, contracted to supply services or things in Arkansas, contracted to insure anyone or anything located in Arkansas, or received any money or property from an estate in Arkansas. Defendant argues that any tortious conduct alleged to have occurred, was initiated and completed on December 21, 1982, in Missouri.

 The Court finds that Sgt. Sookdeo has no contacts with Arkansas and to exercise jurisdiction over him would violate the clear mandate of the United States Supreme Court. Due process requires at least minimum contacts before personal jurisdiction may properly be exercised over a nonresident defendant. *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 310, 100 S.Ct. 559, 586, 62 L.Ed.2d 490 (1980); *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The Court concludes that it lacks personal jurisdiction over plaintiff's "federal" claim. Given this conclusion, the Court cannot retain jurisdiction over the pendent state claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Jennings v. Davis,* 339 F.Supp. 919 (W.D.Mo.1972), *aff'd* 476 F.2d 1271 (8th Cir.1973); *Hughes v. Ford Motor Credit Co.,* 360 F.Supp. 15 (E.D.Ark.1973).

As the Court lacks personal jurisdiction over the defendant, Sgt. Sookdeo, it will dismiss the case without addressing the substantive issues this claim raises.

It is therefore Ordered that the defendants' motion to dismiss be, and it is hereby, granted.