**Mary HUBBARD, Plaintiff,**

**v.**

**Frank MOORE, Individually and d/b/a E. P. Reagan Used Cars, Defendant.**

**Linda STEVENS, Plaintiff,**

**v.**

**Ron ROWE, d/b/a Ajax Used Cars, Defendant.**

**Civ. Nos. 81–4031, 81–4165.**

United States District Court, W. D. Arkansas, Texarkana Division.

Feb. 24, 1982.

David J. Manley and Marilyn Rauch, East Texas Legal Services, Texarkana, Tex., for plaintiff Hubbard.

Jim Hooper, Friedman & Hooper, Texarkana, Tex., for defendant Moore.

Marilyn Rauch, East Texas Legal Services, Texarkana, Tex., for plaintiff Stevens.

John C. Johnson, Jr., Texarkana, Ark., for defendant Rowe.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

These two cases arise under similar facts and present a common question of federal pendent jurisdiction. Both plaintiffs are represented by the same attorney (East Texas Legal Services), and in the complaints filed the remedies sought are substantially the same.

Plaintiffs in both cases invoke the primary jurisdiction of this Court under the provisions of the Federal Truth-In-Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Federal Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1981 *et seq.* In neither case is it alleged that there exists complete diversity of citizenship between the parties.

In the *Hubbard* case, there is neither a complete diversity of citizenship between the parties nor is the amount in controversy in excess of $10,000.00.

In the *Stevens* case, the only allegations relative to the jurisdiction of this Court are that the Court has jurisdiction under the provisions of the Truth-In-Lending Act and the Federal Motor Vehicle In-

formation and Cost Savings Act. It is alleged that by reason of the allegations relative to these federal laws, that the Court has jurisdiction because of the provisions of 28 U.S.C. § 1337 (a proceeding arising under any act of Congress regulating commerce or protecting trade in commerce). While it might be argued that this Court would have subject matter jurisdiction of the non-federal claims even if pendent jurisdiction is not exercised, it should be noted that the only allegations relative to citizenship of the parties is contained in paragraph III of the complaint in which it is alleged that Linda Stevens "is a citizen of the United States and a resident of Bowie County, Texas." As to defendant Rowe, it is alleged that he was "at all times relevant hereto doing business as Ajax Used Cars and was engaged in the business of selling used cars at his place of business in Texarkana, Miller County, Arkansas." There is no allegation relative to the citizenship of Rowe. As was noted above, the plaintiff does not allege that this Court has jurisdiction by reason of diversity of citizenship (28 U.S.C. § 1332). In any event, the law is well settled that the federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. See cases cited in 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3522, n. 3. Facts showing the existence of jurisdiction must be affirmatively alleged in the complaint. See cases cited at note 4 of 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3522. In this case, plaintiff has not even alleged any facts relative to the citizenship of either of the parties other than that Linda Stevens is a citizen of the United States. It is alleged that she is a resident of Bowie County, Texas, but "residency" and "citizenship" are not synonymous. See cases cited at note 244 of 28 U.S.C.A. § 1332.

Thus, this Court does not have subject matter jurisdiction of the non-federal claims in either of these lawsuits unless it retains jurisdiction of such non-federal claims under the pendent jurisdiction doctrine.

In Case No. 81–4031, in which Mary Hubbard is the plaintiff and Frank Moore, d/b/a E. P. Reagan Used Cars, is the defendant, it is alleged that the plaintiff on or about March 29, 1980, went to defendant's used car lot and purchased a 1975 Oldsmobile automobile, and, at the same time, a 1973 Mercury. She claims that in both cases the defendant told her that the cars were "good cars" and promised to repair anything that went wrong with them for a period of 30 days from purchase. She alleges that she agreed to pay $1,095.00 for the Oldsmobile and traded in her 1971 Buick and was allowed $495.00 towards the down payment. She attached as Exhibit "A" to her complaint an invoice which is almost totally illegible, but it appears that something in excess of $900.00 was financed. She does not set forth in her complaint the purchase price of the Mercury, but says she received only an invoice much like Exhibit "A", which she no longer has. She claims that she received nothing other than Exhibit "A" and was not given the disclosures required by the Truth-In-Lending Act or by the Federal Motor Vehicle Information and Cost Savings Act.

She claims that both vehicles experienced serious mechanical difficulty within the first two weeks after purchase, requiring that the Oldsmobile be returned to the seller for repairs three times within a two-week period, and the Mercury two times within such two-week period. It is alleged that the Oldsmobile quit running on April 20, 1980, and the Mercury was experiencing difficulties and had a loud knock, so on that date she returned both vehicles to the dealer and demanded that the vehicle that she traded in be returned to her and for return of her single payment of $51.75 paid on the Oldsmobile and her $250.00 down payment paid on the Mercury. She alleges that the defendant refused and that she left the automobiles with him and received no notice of the disposition of either.

She alleges and delineates seven separate causes of action against the defendant. In the first cause of action alleged, she claims

that the defendant failed to disclose the credit information required by the Truth-In-Lending Act, and prays for damages in relation to each automobile purchased of from $100.00 to $1,000.00.

In the second cause of action she alleges that the defendant violated the Federal Motor Vehicle Information and Cost Savings Act by failing to give the disclosures and certifications required by that act, and prays for damages of $1,500.00 in relation to each automobile purchased.

She alleges, in count three, that the defendant violated the provisions of the Arkansas Consumer Protection Act, Ark.Stat. Ann. § 70–901 *et seq.*, by "using deception and concealment, suppression, or omission of material facts with the intent that the plaintiff rely on that concealment, suppression or omission" and "by knowingly making false representations as to the characteristics of or alterations to the vehicles." She alleges that she relied upon the false representations and suffered damages thereby in the total amount of $551.75.

In counts four, five, six and seven, she alleges facts which she believes indicates that defendant made to her implied warranties of merchantability, fitness for a particular purpose and express warranties by affirmation of facts or promise and seeks to revoke her acceptance and, pursuant to Ark.Stats.Ann. § 85–2–714, recover damages on the Oldsmobile in the amount of $1,276.50 and on the Mercury in the amount of $895.00. She also asks that the Court award her reasonable attorney's fees under 15 U.S.C. § 1640 and 15 U.S.C. § 1989.

In Case No. 81–4165, Linda Stevens filed suit against Ron Rowe, d/b/a Ajax Used Cars, alleging that on June 30, 1981, she visited defendant's place of business and purchased from him a 1974 Ford Pinto automobile. She claims that defendant advised her that the motor in the vehicle had been rebuilt and that it was a "good car" and that nothing was wrong with it. She claims that such statements were material and false and that the defendant knew that they were false or made them with reckless disregard for their truth, and that he knew or should have known that plaintiff would rely on them to her detriment. It is alleged that she did rely on such statements, and that within one week of the date of purchase, the vehicle experienced serious mechanical difficulties and, as a result, she had to have the starter and solenoid switch repaired. It is claimed that less than one month after the date of purchase, the vehicle completely broke down when a "piston broke off and broke the cylinder wall." It is alleged that the automobile was towed to defendant's place of business where plaintiff attempted to revoke acceptance or rescind the contract. Defendant refused to rescind the contract or to return the vehicle to plaintiff until the repair bill in an amount in excess of $500.00 for replacement of the defective motor was made. She alleges that the vehicle was not returned to her and that she received no notice of its disposition.

In this case, the plaintiff alleges six separate causes of action delineated in six separate counts. The first and second counts contain allegations relative to the alleged violations of the Truth-In-Lending law and the Federal Motor Vehicle Information and Cost Savings Act. These allegations are substantially identical to the allegations contained in the *Hubbard* case. She prays for damages of from $100.00 to $1,000.00 for violation of the Truth-In-Lending Act, and $1,500.00 for violation of the Federal Motor Vehicle Information and Cost Savings Act.

Her allegations contained in her third count relative to the alleged violation of the Arkansas Consumer Protection Act are also identical to those allegations contained in the complaint filed in the *Hubbard* case, and she prays for damages in the amount of $300.00 for violation of such act.

In her fourth count, she alleges that the defendant breached an implied warranty of merchantability and fitness for a particular purpose, "namely the transporting of persons," and invokes the provisions of Ark. Stat.Ann. § 85–2–314. She seeks to revoke her acceptance under the provisions of Ark. Stat.Ann. § 85–2–714 and prays for damages in the amount of $300.00.

In the fifth count, plaintiff alleges that the defendant unlawfully repossessed the vehicle in violation of Ark.Stat.Ann. § 85–9–503 and that the disposition of the vehicle was wrongful, in violation of Ark.Stat.Ann. § 85–9–504. She alleges that she is entitled to recover from the defendant the loss caused by the defendant's violations, or "at least an amount not less than the credit service charge plus ten (10) per cent of the cash price under Ark.Stat.Ann. § 85–9–507(1)." In her prayer, she asks that she be awarded damages under such statute in the amount of $300.00.

The sixth count contains allegations relative to common law fraud and seeks actual damages in the amount of $300.00 and punitive damages in the amount of $10,000.00.

She also seeks the recovery of court costs and attorney's fees under the applicable provisions of the Truth-In-Lending Act and the Federal Motor Vehicle Information and Cost Savings Act.

The landmark case on the question of pendent jurisdiction is the 1966 case of the *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In that case, it is said that the federal court has pendent jurisdiction of the second claim if: (1) it arises out of the same nucleus of operative facts as does the first claim; and (2) the claims are of such nature that a plaintiff ordinarily would be expected to try them both in the same proceedings. However, the question of whether existing pendent jurisdiction should be exercised in a given case is one that addresses itself to the discretion of the court. In that regard, the Court said, at page 726, 86 S.Ct. at page 1139:

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.... Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedies sought, the state claim may be dismissed without prejudice and left for resolution to state tribunals.

The Court indicated that "there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial." It noted that, in such circumstances, jurisdiction should ordinarily be refused.

The *Gibbs* court noted that the question of whether pendent jurisdiction should be exercised is ordinarily resolved on the pleadings. Since this is the case, it will be helpful to summarize the federal claims pled and the non-federal claims pled in the complaints in each of these cases. In this regard, the only allegations of which this Court would have independent jurisdiction are the allegations relative to violations of the Truth-In-Lending Act and the Federal Motor Vehicle Information and Cost Savings Act. Of course, in relation to the allegations relative to violation of the Truth-In-Lending Act, it was necessary to plead and would be necessary to prove only that the defendant was required to make the disclosures required by the act and that it did not do so. If plaintiff can prove that defendant violated this act, she may recover twice the amount of the finance charge, but not less than $100.00 nor more than $1,000.00. While it is difficult to determine from the almost illegible copies of the exhibits attached to the complaints in these cases, it appears from the amount allegedly financed that recovery in either of the cases could not exceed by much the minimum recovery of $100.00.

As to the allegations in both cases relative to violation of the Federal Motor Vehicle Information and Cost Savings Act, it was necessary for the plaintiff to plead and would be necessary for her to prove only that the defendant was required by the act to give the disclosures and notifications required by the act and that such notifications and certifications were not made or were falsely made. It is alleged in both cases that they were not made. If that is proved, the plaintiff may recover three times the amount of the actual damages.

In the complaint filed in each case, it is alleged that the damages, trebled, amount to $1,500.00.

Thus, it can be seen that, when the federal claims of which this Court has independent jurisdiction are considered, in total, the maximum recovery could not be more than $3,200.00 in the *Hubbard* case, and, in the *Stevens* case, not more than $1,700.00, even if the plaintiffs are given the benefit of the doubt and it is assumed that they will recover the total amount prayed for. More importantly, as indicated above, at any trial of this matter the proof should be relatively simple on the federal claims, and the issues which the jury would be required to determine, if a jury is requested and allowed, would be direct and to the point, the only questions being whether the defendants were covered by the relevant acts and, if so, whether they violated them.

In these cases, however, the plaintiffs have taken these rather simple federal issues and have engrafted upon them multiple non-federal claims of considerably more magnitude and complication. This is a case of the tail wagging the dog, and one wonders if the federal claims were not made simply to attempt to get federal court jurisdiction of the more substantial claims which the plaintiffs wish to allege. The non-federal claims made are:

(1) Violation of the Arkansas Consumer Protection Act (Ark.Stat.Ann. § 70–901 *et seq.*).

(2) Breach of an implied warranty of merchantability.

(3) Breach of an implied warranty of fitness for a particular purpose.

(4) Breaches of express warranties by affirmation of fact or promises.

(5) Wrongful repossession and disposition of collateral in violation of Ark.Stat. Ann. § 85–9–503.

(6) Common law action of fraud and deceit for which the plaintiff in the *Stevens* case prays for damages in the amount of $10,300.00.

It would serve no useful purpose for the Court to attempt to delineate, in any detail, the complications that the claims which are normally cognizable in state court which have been joined in this case have wrought upon it. Suffice it to say that not only has the case been made extremely more complicated by joinder of the claims which should be tried in state court, there is, in the words of *Gibbs, supra*, "the likelihood of jury confusion in treating divergent legal theories of relief." For example, how could a jury be expected to differentiate between the proof necessary to prove a violation of the Federal Motor Vehicle Information and Cost Savings Act and that required to prove the plaintiff's allegations of common law fraud and deceit or breaches of various types of warranties?

As the Court said in *Hughes v. Ford Motor Credit Co.*, 360 F.Supp. 15 (1973), this Court "will take this opportunity to announce that as a matter of general policy it will be reluctant to exercise pendent jurisdiction in cases like these where the statutory claim on which primary jurisdiction is based is plainly insubstantial or without merit or where there is no real or substantial connection between the pendent claim and the deficiencies in disclosure alleged in support of the primary claim." The Court believes that this litigation is an example of one of the reasons that litigation in federal courts has reached the point where there is danger that the job for which they were established cannot be accomplished. As one judge has observed: "The reality is that today there is a made rush to the federal courts." Aldisert, Judicial Expansion of Federal Jurisdiction: A Federal Judge's Thoughts on Section 1983, Comity and the Federal Caseload, 1973 A. O. & Soc. O. 557, 559.

Federal courts were intended by the drafters of the United States Constitution to be courts of limited jurisdiction. The courts of general jurisdiction were to be the state courts. As the United States Supreme Court said in *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971):

Due regard for the rightful independence of state governments, which should actu-

ate federal courts, requires that those courts scrupulously confine their own jurisdiction to the precise limits that a federal statute has defined.

"... [T]he rule is well settled that the parties seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence of that court. The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists." 13 Wright, Miller & Cooper, Federal Practice And Procedure: Jurisdiction § 3522 at p. 45.

The Court recognizes that, in the proper case, as in *Gibbs, supra,* the court may exercise pendent jurisdiction of claims over which it would not normally have subject matter jurisdiction when those claims are properly joined with claims that are cognizable in federal court. *See* 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3567. However, the law has been well settled, at least since the decision in *Gibbs, supra,* if not before, that the court has discretion in deciding what non-federal claims it will retain. The law clearly is that the court has the power to hear non-federal claims in cases where the doctrine of pendent jurisdiction may be utilized, but is not required to. As the Court said in *Gibbs, supra,* the power need not be exercised in every case where it is found to exist. In the cases at bar, the Court firmly believes that the matters raised in these two lawsuits, other than the alleged violations of the Truth-In-Lending Act and the Federal Motor Vehicle Information and Cost Savings Act should be tried in state court. What the other allegations of the complaint are all about is that the plaintiffs allege they bought motor vehicles from the defendants and that they were sold bad vehicles, in violation of certain specified provisions of Arkansas law and in violation of certain common law duties, all of which can be and should be tried in state court. As a matter of fact, it should be pointed out that both the Truth-In-Lending Act and the Federal Motor Vehicle Information and Cost Savings Act specifically provide that any court of competent jurisdiction may

enforce the provisions of these acts. Clearly, if the plaintiffs truly want their entire lawsuits tried at one time, they could file the entire action in state court. *Vogt v. Nelson,* 69 Wis.2d 125, 230 N.W.2d 123 (1975).

In these cases, the Court finds that the issues which should be tried in state court substantially predominate, not only in terms of proof and of the scope of the issues raised, but also in terms of the comprehensiveness of the remedies sought. In addition, the Court believes that there is a likelihood of jury confusion in treating the divergent legal theories of relief. For these reasons, the Court finds that, in its discretion, its jurisdiction should be refused and the state claims dismissed without prejudice.

An order will be entered dismissing all claims in each of these lawsuits, without prejudice, other than the claims made in relation to the alleged violations of the Truth-In-Lending Act and the Federal Motor Vehicle Information and Cost Savings Act.

In her brief filed in this matter, plaintiff Hubbard contends that the Court should retain jurisdiction of the state claims because the defendant has not objected to the jurisdiction of the court. Of course, the law is well settled that the parties may not confer on a federal court jurisdiction that has not been vested in that court by the Constitution and the Congress and that the parties cannot waive lack of jurisdiction. If the court does not have jurisdiction, it is obliged to notice it on its own motion. *Fort v. Ralston Purina Co.,* 452 F.Supp. 241 (D.C. Tenn.1978); *Van Horn v. Western Electric Co.,* 424 F.Supp. 920 (D.C.Mich.1977); *Fischer v. Holiday Inn of Rhinelander, Inc.,* 375 F.Supp. 1351 (D.C.Wis.1973); *Sexton v. Allday,* 221 F.Supp. 169 (D.C.Ark.1963). When the complaint was filed in the *Stevens* case, the Court wrote the attorney for the plaintiff advising that it had doubt that it had subject matter jurisdiction of the non-federal claims and requested a brief on the subject. Likewise, in the *Hubbard* case,

the attorney for the plaintiff was advised of the doubt that the Court had in this respect, and such issues were also briefed by the plaintiff's attorney in that case. In the *Stevens* case, the attorney for the defendant later filed a motion to dismiss, but as it was incumbent upon it to do, these issues were raised by the Court on its own motion. After considering the complaints filed and the briefs of the plaintiffs, the Court believes that the ruling that it has made as set forth above is the proper one.