Harold **GREY**

v.

**EUROPEAN HEALTH SPAS, INC.**

Rosemary **PASQUALE**

v.

**EUROPEAN HEALTH SPAS, INC.**

Otis **WILLIAMS**

v.

**EUROPEAN HEALTH SPAS, INC.**

**Civ. Nos. N–75–37, N–75–223 and N–75–229.**

United States District Court, D. Connecticut.

Feb. 9, 1977.

David N. Lesser, Clendenen & Lesser, New Haven, Conn., for plaintiffs.

William T. Kosturko, Betsy H. Firger, Day, Berry & Howard, Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

These three truth-in-lending cases present similar issues concerning conformity of a consumer credit contract for membership in a health spa to the truth-in-lending requirements of federal and state law. The contract form involved in the three cases is the same.

Plaintiffs seek summary judgment on either of two alleged violations of federal requirements. First, they assert that the terms "finance charge" and "annual percentage rate" as printed on the form contract do not meet the requirement that they be more conspicuous than the other required terms. Second, they claim that the terms "unpaid balance" and "total downpayment" are not used as required. Defendant denies these claims and further

raises the issue of whether the plaintiffs themselves have failed to comply with the statute so as to disable them from maintaining these actions. These contentions will be discussed in turn.

*Conspicuousness of the terms "finance charge" and "annual percentage rate"*

██ The applicable regulation, 12 C.F.R. § 226.6(a), and Conn. Bank. Reg. § 36–395–5(a)[1] provides that where the terms "finance charge" and "annual percentage rate" are required, they shall be printed more conspicuously than "other terminology required by this part." Plaintiffs argue that the terms "finance charge" and "annual percentage rate" are not printed more conspicuously than other required terms, specifically, the identity of the creditor, a disclosure required by 12 C.F.R. § 226.8(a) and Conn. Bank. Reg. § 36–395–7(a); and terms such as "MEMBER ACKNOWLEDGES THAT HE HAS READ AND RECEIVED A FILLED–IN, SIGNED COPY OF THIS AGREEMENT" and "NOTICE TO BUYER," allegedly required under other consumer protection statutes.

There is no truth-in-lending requirement that the terms "finance charge" and "annual percentage rate" be the most conspicuous items on the contract. The requirement is that these terms be more conspicuous than the other terms required by 12 C.F.R. Part 226. Thus there is no merit to the argument that "finance charge" and "annual percentage rate" should be printed more conspicuously than terms required by other consumer protection statutes or otherwise appearing on the contract, unless these terms are required by 12 C.F.R. Part 226.

The identity of the creditor, however, is arguably a disclosure required by 12 C.F.R. Part 226, since § 226.8(a) requires that "the creditor shall furnish the customer with a duplicate of the instrument or a statement *by which the required disclosures are made*

*and on which the creditor is identified."* (Emphasis added). Yet even this very section undermines plaintiffs' claim. A fair reading of the emphasized portion indicates that although the creditor's identity is in one sense "required" by this section, and thus implicitly by Part 226, it is not one of the "required disclosures" as that term is used in the regulations. The fact that § 226.8(a) sets up the creditor identification requirement but in the same breath refers to the "required disclosures" indicates an intent to keep the concepts separate. If the creditor's identity were intended to be one of the "required disclosures" and treated the same way as the other disclosures, the underlined portion would have read: "by which the required disclosures, including the creditor's identity, are made." Taking Part 226 as a whole, it is fair to say that the "terminology required by this part" does not include the creditor's identity requirement of § 226.8(a) but only the "required disclosures" as that term is used in § 226.-8(a) itself. The staff of the Federal Reserve Board appears to have adopted this interpretation. FRB Official Staff Interpretation, No. FC–0001, 41 F.R. 41907, CCH Consumer Credit Guide ¶ 31,449 (Aug. 31, 1976, effective Sept. 22, 1976).

This interpretation is supported by the reasons behind the requirement that "finance charge" and "annual percentage rate" be printed conspicuously. These two terms, of all the truth-in-lending disclosures, best serve the functions of making the consumer aware of the costs of credit and enabling him to undertake comparative shopping for credit. Setting them off from the other numerical terms such as "amount financed" or "unpaid balance of cash price" facilitates the purposes for which truth-in-lending laws were enacted and minimizes confusion in what could be a bewildering array of numbers. The relative sizes of the required numerical disclosures and the cred-

---

1. Connecticut has been granted an exemption under the provisions of 12 C.F.R. § 226.12. Thus the disclosure requirements of Connecticut law constitute the disclosure requirements of the federal law, "with the exception of those provisions [of state law] which impose disclo- sure requirements not imposed by [the federal] Act". 12 C.F.R. § 226.12(c)(2). *See Ives v. W. T. Grant Company,* 522 F.2d 749 (2d Cir. 1975); *Moore v. European Health Spas,* Civil No. N–75–291 (D.Conn. Oct. 15, 1976), at n. 1.

itor's name affect neither the purposes of the act nor the potential for confusion.

On this contract form the terms "finance charge" and "annual percentage rate" are substantially more conspicuous than the other numerical truth-in-lending disclosures surrounding them. They are significantly larger, prominently displayed in boldface type, and printed all in capital letters, in contrast to the surrounding terms, which are in lower case except for initial capitals. In short, the terms "finance charge" and "annual percentage rate" stand out from the other disclosures and quite definitely catch the eye. This fact distinguishes the conspicuousness cases plaintiffs cite, none of which deals with the relative size of the creditor's identity.

*Failure to use the terms "unpaid balance" and "total downpayment"*

■ The next alleged violation is the defendant's failure to use the terms "total downpayment" and "unpaid balance." To understand whether these omissions constitute a violation requires an outline of the sequence of computations contemplated by the pertinent regulation. The starting point is the "cash price." From this is subtracted a sub-total consisting of the sum of the "cash downpayment" and the "trade-in." This sub-total is called the "total downpayment." The result of this first subtraction is called the "unpaid balance of cash price." To this is added an item that includes all other charges not included in the finance charge. This item has no required name, but will be referred to herein as "other charges." The result of this addition is called the "unpaid balance." From this is subtracted a sub-total consisting of the sum of the "prepaid finance charge" and the "required deposit balance." This sub-total is called the "total prepaid finance charge and required deposit balance." The result of this second subtraction is called the "amount financed." To this is added the "finance charge." The result of this addition is called the "deferred payment price." The sequence of items, identified by letters, may be portrayed as follows:

```
    (a) cash price

        (b) cash downpayment

    +  (c) trade-in
    =  (d) total downpayment

 -  (d) total downpayment
 =  (e) unpaid balance of cash price

 +  (f) other charges
 =  (g) unpaid balance

        (h) prepaid finance charge

    +  (i) required deposit balance
    =  (j) total prepaid finance charge
           and required deposit balance

 -  (j) total prepaid finance charge and
        required deposit balance
 =  (k) amount financed

 +  (l) finance charge
 =  (m) deferred payment price
```

Defendant's disclosure form omits items (d) and (g). Defendant contends these terms are not "applicable" within the meaning of the regulation. In its view a term is not applicable if its only function is to repeat an identical amount disclosed earlier in the sequence to which no other sum has been added or subtracted. In these transactions, since there is no "trade-in," the "cash downpayment" is the same as the omitted term "total downpayment," and since there are no "other charges," the "unpaid balance of cash price" is the same as the omitted term "unpaid balance."

Three unreported decisions support the defendant's position, at least with respect to omission of the term "unpaid balance" when there are no "other charges." *St. Germain v. Bank of Hawaii*, Civ.No. 75–0143, CCH Consumer Credit Guide ¶ 98,434 (D.Hawaii Apr. 12, 1976); *Rolader v. Georgia Power Co.*, Civ.No. 19,818, CCH Consumer Credit Guide ¶ 98,551 (N.D.Ga. June 23, 1975); *Ivey v. Atlanta Gas Light Co.*, Civ.No. C74–521A, CCH Consumer Credit Guide ¶ 98,704 (N.D.Ga. Nov. 1, 1974). This position is also supported in staff letters of the Federal Reserve Board. Federal Reserve Board Public Position Letter No. 536, CCH Consumer Credit Guide ¶ 30,748 (Sept. 23, 1971); Federal Reserve Board Letter No. 740, CCH Consumer Credit Guide ¶ 31,059 (Dec. 28, 1973).

Plaintiffs' contention draws some support from the Second Circuit's decision, affirming the decision of this Court, in *Ives v. W. T. Grant Co.*, 522 F.2d 749 (2d Cir. 1975). *Ives* held that a violation occurred when the term "unpaid balance" was omitted, even though "amount financed" was disclosed, in a situation where the amounts were identical, *i. e.*, there were no intermediate items to be deducted of the sort identified as items (h), (i), and (j) in the schematic computation, *supra*. See also Federal Reserve Board Letter No. 842, CCH Consumer Guide ¶ 31,165 (Sept. 19, 1974) (requiring use of the term "unpaid balance" even when identical to "amount financed").

Obviously, the phrase "as applicable" in the regulation requiring disclosure of terms implies that in some situations some terms will not be applicable and therefore need not be disclosed. Thus, in these cases, even the plaintiffs do not complain that there is no disclosure of a "trade-in" since in fact there is no "trade-in." At a minimum the phrase "as applicable" permits the omission of items (b), (c), (h), and (i) when in fact no such items are involved in the transaction. But these items, as can be seen from the schematic computation, all occur in sub-computations, rather than in the direct sequence of additions and subtractions that leads from the starting item of "cash price" to the concluding item of "deferred payment price." The claims here concern omission of items in that direct sequence.

By ruling against omission of "unpaid balance" from that direct sequence, *Ives* supports the plaintiffs here, but is arguably distinguishable. In *Ives* there were "other charges" (item (f)) to be added to "unpaid balance of cash price" (item (e)). Omission of "unpaid balance" (item (g)) thus left out the immediate result of the addition of items (e) and (f). Even though the result of this addition appeared as "amount financed" (item (k)), *Ives* upheld the finding of a violation, apparently because of a view that the consumer's understanding is aided by seeing the next term in the sequence that immediately follows any computation. As expressed in FRB Letter 842, *supra*, "use of the term *unpaid balance* does offer some assistance to the consumer in understanding the mathematical progression on the Truth In Lending disclosure statement." In these cases, the omission of "unpaid balance" does not interfere with the consumer's understanding in precisely the same way as it did in *Ives*. Here there is no item of "other charges" to be added just prior to reaching the total for "unpaid balance." The precise analogue of these cases to *Ives* would exist if the term "unpaid balance" were disclosed but the term "amount financed" were omitted because there were no items to be subtracted just prior to reaching the total for "amount financed."

The issue is whether each item for which some dollar amount exists[2] in the direct sequence of computations must be stated or is it sufficient to state only those items in the direct sequence that immediately follow and reflect the result of the addition or subtraction of some item. I agree with the defendant that omission of the term "unpaid balance" in these cases detracts very little if at all from a consumer's ability to follow the progression of mathematical computations. Disclosure of the term "unpaid balance of cash price" followed in sequence by the term "amount financed" showing an identical amount informs the consumer that there have been no intervening additions or subtractions. The difficulty I have with defendant's position is determining any rational basis for distinguishing between the omission of "unpaid balance" in these cases and the omission of all other terms in the direct sequence of computations that are identical in amount with terms previously stated. For example, I do not think the term "amount financed" could be omitted, even when identical in amount with the term "unpaid balance." When a finance charge is exacted, it is not realistic to think that the term "amount financed" is

**2.** If there are no other charges or no total prepaid finance charge and required deposit balance, then such terms (items (f) and (j)) are clearly not applicable and need not be disclosed as zero items.

not applicable. Indeed, if defendant's position were applied consistently, a transaction involving no addition to or subtraction from the cash price except the finance charge could be reflected on a disclosure statement using only the terms "cash price," "finance charge," and "deferred payment price."

The disclosure statement serves a purpose beyond aiding the consumer to understand the progression of mathematical computations involved in his transaction. It also serves to provide an easy basis for comparison of the terms offered by competing creditors. If a term such as "unpaid balance" is omitted because identical in amount with "unpaid balance of cash price," a consumer is somewhat impeded in comparing the actual unpaid balance with the actual unpaid balance in a second transaction where other charges have been added. Admittedly it does not require extraordinary intelligence to make the comparison of the item "unpaid balance of cash price" in the first transaction with the item "unpaid balance" in the second transaction. But truth-in-lending laws are designed to protect those with the least intelligence, since these are the very persons most likely to be overreached by unscrupulous creditors or to be unaware of competitive advantages to be obtained in choosing among honorable creditors. These laws are to protect those who attend neighborhood consumer education classes, where it is entirely realistic to expect the instructors to urge their students to compare the terms offered by competing creditors and to educate them in the use of the terms required by these laws. Suppose the instructor urges comparison of the sums different creditors disclose under the item "unpaid balance." One creditor includes "other charges" and still offers a lower "unpaid balance" than a second creditor who does not impose any "other charges." The second creditor discloses only the item "unpaid balance of cash price" and omits "unpaid balance." The consumer educated to compare amounts under "unpaid balance" may fail to realize that the first creditor is offering better terms.

█ Like most issues that arise in this highly technical field, the issue here approaches analysis of heavenly pinhead terpsichore. But some decision must be made as to when a term is not "applicable" within the meaning of the pertinent regulation. Clearly there is an unpaid balance in the transactions involved in these cases. In the most literal sense, therefore, the term "unpaid balance" is applicable, despite the fact that its amount is identical to an item previously disclosed.[3] If the Federal Reserve Board were to promulgate a regulation relieving creditors of the need to disclose some terms equal in amount to terms previously disclosed, I would give that agency considerable leeway in construing in an authoritative manner the statute it is charged with administering. At least such a regulation would relieve relying creditors of civil liability. 15 U.S.C. § 1640(f). But until the Board decides to countenance such omissions, I think it more appropriate for courts to give the statute and pertinent regulations a rather strict construction, especially when such a construction plausibly advances the objectives of the statute. I conclude that omission of the term "unpaid balance" is a violation.[4]

3. Requiring disclosure of the term "unpaid balance," even when it is identical in amount to the term "unpaid balance of cash price," does not require repetition of identical numbers. It is sufficient if the term "unpaid balance" appears in parentheses immediately beneath the term "unpaid balance of cash price" with sufficient spacing to make clear that the dollar amount listed applies to both terms. Where the "amount financed" is also identical in amount to the "unpaid balance," the term "amount financed" can also appear in parentheses, again without repetition of the dollar amount, so long as it is clear that the dollar amount listed applies to all three terms. The ease of doing this has apparently occurred to the defendant, whose current disclosure statement form adopts this very practice. Perhaps an even clearer method would be to list the terms (whose amounts are identical) in a column, without parentheses, with all of the terms followed by a single brace pointing to the dollar amount.

4. A finding of this violation makes it unnecessary to decide whether omission of only the term "total downpayment" would suffice to establish a violation. The "logic" of the text

■ Since a violation has been found, summary judgment for the plaintiffs is appropriate unless there is merit to defendant's claim that genuine issues of material fact exist requiring further discovery. Defendant attempts to raise several such issues in each of the three cases. In all three, defendant argues that it is entitled to a trial to cross-examine plaintiffs on whether the plaintiffs in fact entered into the contracts for personal, family, or household purposes rather than for business or commercial purposes, since the federal and state acts cover only the former. See 15 U.S.C. § 1602(h), 1603(*1*); Conn.Gen.Stat. §§ 36–393(g), 36–394(a). Its desire to cross-examine the plaintiff, however, does not raise a triable issue of fact. In the *Grey* case plaintiff's Request for Admission # 3, filed February 4, 1976, covered precisely this issue, and when the time for denial provided by Fed.R.Civ.P. 36(a) elapsed, this matter was deemed admitted. In *Williams* and *Pasquale* the defendant averred that it was without sufficient information to admit or deny an identical request for admission. The affidavits of the plaintiffs specifically state that they entered into the contracts for personal, family and household purposes. Nothing has been submitted by the defendant to counter these affidavits, so no genuine issue of fact has been raised on this point.

■ Defendant argues in the *Pasquale* and *Williams* cases that summary judgment is unavailable because the intent and motive of the plaintiffs require further exploration. This argument rests on 15 U.S.C. § 1640(h), Conn.Gen.Stat. § 36–407, stating:

A person may not take any action to offset any amount for which a creditor is potentially liable to such person under (the Act) against any amount owing to such creditor by such person, unless the amount of the creditor's liability to such person has been determined by judgment

of a court of competent jurisdiction in an action to which such person was a party.

Defendant interprets this provision to mean that if a plaintiff has stopped paying on his debt to the defendant, his right to truth-in-lending damages is lost if his reason for stopping payment was a desire to offset his potential truth-in-lending recovery against the amount of the debt owed.

The statutory language does not require this construction. Rather, the provision on its face does no more than prohibit a debtor from taking "any action" to offset an unliquidated truth-in-lending recovery against the amount of his debt. Under this provision a debtor may not stop paying on his debt when he reaches the point where his remaining payments equal the statutory penalty; in other words, he may not use self-help remedies in lieu of a judicial action to recover his truth-in-lending damages.

Defendant's argument is apparently that any default on the underlying debt triggers an inquiry into whether the debtor intended to invoke such a self-help remedy—in other words, an inquiry into why he stopped paying. But this approach conflicts with the settled policy of this District of treating a truth-in-lending plaintiff's claim for statutory damages entirely apart from whatever liability he may still have to the defendant for the underlying debt. See *Ball v. Connecticut Bank & Trust Co.*, 404 F.Supp. 1 (D.Conn.1975); *Moore v. European Health Spas, Inc.*, Civil No. N-75–291 (D.Conn. Oct. 15, 1976). These cases held, in essence, that when a plaintiff chooses a federal forum for the enforcement of his truth-in-lending rights, the defendant may not by way of counterclaim turn that federal forum into a debtor-creditor court. Defendant's proposed inquiry into the purity of the plaintiffs' motives in bringing the instant truth-in-lending suit would almost certainly require an examination of the validity of the

might lead to a similar result. Yet it could also be argued that what is important is disclosure of all the items involved in the direct sequence of computations, not the "sub-totaling" that occurs when "cash downpayment" is added to zero (because there is no trade-in) to obtain

"total downpayment." Nor is it likely that consumers would have any difficulty comparing a transaction involving only a cash downpayment with a transaction involving both cash downpayment and trade-in.

848

underlying debt and the existence of possible defenses to it, since without a determination of these issues there would be no way of knowing whether there is truly an amount owing from plaintiff to defendant against which plaintiff would want to offset the truth-in-lending recovery. What defendant essentially wants is an inquiry into *why* the plaintiffs stopped paying, when this Court has held that it will not be concerned with *whether* they have stopped. Given our repeatedly stated unwillingness to import extraneous state law issues into federal truth-in-lending suits, see *Ball v. Connecticut Bank & Trust Co., supra; Moore v. European Health Spas, Inc., supra; Solevo v. Aldens, Inc.,* 395 F.Supp. 861 (D.Conn.1975), it would be unwise to embark upon this kind of inquiry without a considerably more explicit indication that this is what Congress really intended in enacting a provision to bar attempts to offset.

■ The remaining issues in the cases involve claims grounded solely in Connecticut state law with no counterpart in federal law. The issues involve the omission of the address and telephone number for directing inquiries relating to billing errors and, in the *Grey* case, allegedly deceptive and unfair trade practices in violation of Pub.Act No. 73–615, codified in Conn.Gen.Stat. § 42–110a *et seq.*

This Court set forth the considerations governing the discretionary exercise of pendent jurisdiction in truth-in-lending cases in *Solevo v. Aldens, Inc., supra.* Though *Solevo* involved pendent usury claims rather than state truth-in-lending claims, which may be more closely related to the central federal claim, similar prudential considerations militate against exercising pendent jurisdiction here. Since the state court is competent to litigate both state and federal issues, "only a general preference for a federal forum for the federal cause of action . . . would dictate the exercise of pendent jurisdiction." 395 F.Supp. at 863. Plaintiffs' desire for a single forum to hear state and federal claims could have been more appropriately achieved by

presenting all claims to the state court, which has both the authority and the duty to resolve them. While this Court has the authority to exercise pendent jurisdiction, it is certainly under no obligation to do so. Particularly where, as here, the state claim is one of first impression, it would be inappropriate to decide it.

Accordingly, the plaintiffs' motions for summary judgment are granted. Upon submission of affidavits concerning statutory damages and reasonable attorney's fees, judgment will be entered.