**Frank SCHMIDT**

v.

**CITIBANK (SOUTH DAKOTA), N.A. (CBSD).**

**No. Civ. N–85–517 (PCD).**

United States District Court, D. Connecticut.

Oct. 14, 1986.

David M. Lesser, Clendenen & Lesser, New Haven, Conn., for plaintiff.

Marshall Goldberg, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, Conn., for defendant.

RULING ON MOTION TO DISMISS

DORSEY, District Judge.

This is an action for declaratory and injunctive relief and damages based on defendant's alleged violation of federal and state "truth-in-lending" legislation. Defendant allegedly failed to provide information to credit card customers required by the Truth in Lending Act (Title I of the Consumer Credit Protection Act of May 29, 1968, 82 Stat. 146), 15 U.S.C. § 1601, *et seq.* (hereinafter "Act"), and Conn.Gen.Stat. § 36–393, *et seq.*, and regulations promulgated thereunder. Defendant moves to dismiss pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P. For the reasons set forth below, defendant's motion is denied.

*Discussion*

Truth-in-lending legislation is intended to increase competition among creditors and to protect consumers who use credit:

> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions ... engaged in the extension of consumer credit would be strengthened by the informed use of credit.... It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the un-

informed use of credit, and to protect the consumer against inaccurate and unfair credit card practices.

15 U.S.C. § 1601(a).

To promote its objectives, Congress authorized private civil actions in which individual consumers function as private attorneys general who are awarded attorney fees and statutorily prescribed minimum damages if a creditor has violated truth-in-lending requirements. Such actions must be commenced "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

In resolving a motion to dismiss, the facts alleged in the complaint must be accepted as true. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Plaintiff alleges that defendant failed to disclose information required in the periodic statements which must be sent by creditors to open-end credit card customers. Plaintiff contends that each statement sent to him without the proper information constitutes a continuing violation and that suit was brought within one year of receiving such periodic statements.

Defendant argues that this suit is untimely because plaintiff *first* received a periodic statement more than a year prior to the complaint. In *Goldman v. First Nat'l Bank of Chicago*, 532 F.2d 10 (7th Cir. 1976), an allegedly improper initial disclosure statement was made by the bank prior to the issuance of the credit card. Suit was instituted more than one year after the credit card was applied for, issued and used. The one-year period was held to run from the date when a finance charge was first imposed:

> The imposition of a finance charge under an open end credit plan in which an inaccurate disclosure has been made is a necessary condition for the assessment of liability since it is this charge against which the accuracy of the disclosure must be measured.... Until a finance charge is levied the debtor has *no cause* for complaint since there has been no action inconsistent with the inaccurate disclosure.

*Id.* at 21. Defendant also relies on *Baskin v. G. Fox & Co.*, 550 F.Supp. 64 (D.Conn. 1982).

Neither *Goldman* nor *Baskin* compels the result sought by defendant. The *Goldman* suit was commenced within one year after the *first* assessment of the finance charge. Consequently, there was no need to decide whether *subsequent* periodic notices would constitute continuing violations of the Act. Indeed, far from "rejecting" the continuing violations theory, as defendant asserts, to the extent that it *did* consider that question (tangentially, in a footnote), the court's comments lend support to *plaintiff's* view of the nature of periodic statements:

> In [*White v. Central Charge Service, Inc.*, CCH Cons.Cred.Guide ¶ 9.170 (D.C. Super.1972)] the plaintiff alleged a violation of section 1637(b)(2) of the Act which requires a description of the goods purchased to be included on the periodic billing statement sent to the customer. The *White* court found that since prior to the receipt of the billing statement the consumer could not be aware of its content and thus that a violation of the Act had occurred, the statute ran from the date the statement was received. The *White* case is of no assistance in analyzing the instant action. *The requirements in regard to periodic billing statements represent independent violations of the Act.* The violation alleged in *White* was in such a billing statement and not in the disclosure statement. *White*, therefore, is analogous to an *omission* in a disclosure statement, not to a situation where there has been a false, incomplete or misleading disclosure as Goldman alleges in the instant case.

*Goldman* at 17, n. 10 (emphasis added).

Similarly, *Baskin* does not resolve the issue presented here. There, the plaintiff complained about defendant's alleged violation of the law in a letter to defendant more than a year before filing suit. Plaintiff thus had actual knowledge of the violation and *Goldman* was read to permit a suit if filed "within a year of the time the

violation came to plaintiff's attention." 550 F.Supp. at 67. Although the plaintiff there continued to receive allegedly improper periodic statements up to less than a year prior to bringing the action, plaintiff's actual, earlier, knowledge of the violation was held to trigger the statute of limitations—and not, as defendant here maintains, the moment "when the consumer first has an opportunity to perceive the violation." Defendant's Brief at 7. Thus, *Baskin* did not "expressly reject" a continuing violation theory; it simply did not consider the theory.

In the instant action, plaintiff's situation falls somewhere between *Goldman* and *Baskin*. Unlike *Goldman*, for over a year prior to filing suit, he may have had an opportunity to discover defendant's alleged violation of the Act; but, unlike *Baskin*, he did not actually discover it. Therefore, the question of whether each allegedly improper periodic statement constitutes a continuing violation of the Act is squarely presented.

Periodic statements are required by 15 U.S.C. § 1637(b): "The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth" a number of prescribed items. *See Pollock v. European American Bank*, Civ. No. N–77–159, slip op. at 2 (Aug. 1, 1977) ("The federal and state truth-in-lending laws impose disclosure obligations on a creditor not just at the time an open-end credit arrangement is established, but also each time the creditor transmits to the debtor a periodic statement at the end of a billing cycle resulting in an outstanding balance").

Relevant legislative history shows that Congress expected the monthly statement to make people like the plaintiff aware of their credit options. They were to have, prospectively, not only the monthly rate ... but the annual rate also, so they could compare it with rates of other lenders, ... before deciding whether to accept the invitation to take credit from defendant, shop other lenders, or draw money from savings accounts to pay off the indebtedness. *Ratner v. Chemical Bank New York Trust Co.*, 329 F.Supp. 270, 276 (S.D.N.Y. 1971).

Each periodic statement constitutes a discrete and separate "invitation" to accept credit. Creditors' continuing statutory duty to provide consumers the information required by the Act creates an obligation to include the required information in each monthly statement. Failure to do so is a fresh violation of the Act.[1] The Act should be liberally construed to foster achievement of its remedial purpose. *Ratner*, 329 F.Supp. at 280. Defendant's construction of the Act would permit creditors, once the one-year period after the commencement of a credit relation expires, to continue sending improper statements to consumers with impunity rather than to conform those statements to the Act's requirements. Such a result would be inconsistent with the spirit, if not the letter, of truth-in-lending legislation.

Because plaintiff received an allegedly illegal periodic statement within one year of instituting this litigation, the motion to dismiss is denied.

SO ORDERED.

---

1. Congress has addressed the issue of repetitive violations in periodic statements *not* by imposing an absolute one year cut-off to suits, but by limiting a plaintiff to a single recovery.

   The multiple failure to disclose to any person information required under this chapter ... shall entitle the person to a single recovery ... but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries.

   15 U.S.C. § 1640(g).