Frank SCHMIDT

v.

**CITIBANK (SOUTH DAKOTA) N.A. (CBSD).**

**No. Civ. N–85–517 (PCD).**

United States District Court, D. Connecticut.

Ruling on Cross–Motions for Summary Judgment Nov. 20, 1987.

Ruling on Motion to Reconsider Jan. 6, 1988.

David M. Lesser, Clendenen & Lesser, New Haven, Conn., for plaintiff.

Marshall Goldberg, Esq. Wofsey, Rosen, Keweskin & Kuriansky, Stamford, Conn., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff seeks declaratory and injunctive relief and damages for defendant's alleged violation of the Truth-in-Lending Act ("TILA" or "Act"), 15 U.S.C. § 1601, *et seq.* and Conn.Gen.Stat. § 36–393, *et seq.* Plaintiff and defendant entered into an open-end credit agreement for a VISA credit card.[1] Plaintiff claims that, during the one year ending at the tiling of the complaint, defendant failed to disclose as required by both state and federal law.[2]

Cross-motions for summary judgment on the issue of defendant's liability will be considered together.

### A. STATUTE OF LIMITATIONS

Section 1640(e), 15 U.S.C., provides that any action brought under TILA must be instituted "within one year from the date of the occurrence of the violation." Previously, this court held that each periodic statement received by plaintiff constituted a discrete and separate invitation to accept credit. *Schmidt v. Citibank (South Dakota) N.A. (CBSD)*, 645 F.Supp. 214 (D.Conn. 1986). Failure in each statement to meet the requirements of TILA was deemed a fresh violation of the Act. *Id.* at 216. Defendant renews its claim that plaintiff's claim is time barred and presents, in addition to its previous arguments, evidence that plaintiff knew as early as the Spring of 1984 of the alleged deficiencies for which he is now suing.

The law regarding the commencement of the limitations period in TILA litigation is strict. Contrary to plaintiff's representation, it is not the established rule

---

1. The parties' disagreement as to the precise time of contracting is not relevant to the resolution of these motions.

2. Defendant is a creditor within the meaning of 15 U.S.C. § 1602(f).

that, simply because a creditor is obligated to comply with the requirements of the Act in each monthly statement, the failure to do so constitutes a fresh violation. In closed-end credit arrangements, a theory of "continuing violation" has consistently been rejected because, pursuant to Regulation Z, 12 C.F.R. Part 226, the disclosure requirements in those types of credit transactions are completed when the creditor and borrower contract. Hence, any violation would occur then and any suit would have to be commenced within one year of that date. *See Jones v. Transohio Sav. Ass'n*, 747 F.2d 1037 (6th Cir.1984); *Katz v. Bank of California*, 640 F.2d 1024 (9th Cir.), *cert. denied*, 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 157 (1981); *Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980); *Rust v. Quality Car Corral, Inc.*, 614 F.2d 1118 (6th Cir.1980); *Stevens v. Rock Springs Nat'l Bank*, 497 F.2d 307 (10th Cir.1974); *Wachtel v. West*, 476 F.2d 1062 (6th Cir.), *cert. denied*, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973); *Sutliff v. County Sav. & Loan Co.*, 533 F.Supp. 1307 (N.D.Ohio 1982); *Harvey v. Housing Dev. Corp. & Information Center*, 451 F.Supp. 1198 (W.D.Mo.1978); *Fenton v. Citizens Sav. Ass'n*, 400 F.Supp. 874 (C.D. Mo.1975). In open-end credit accounts, the period has been held to run from the point at which the consumer is first assessed a finance charge. This reasoning has been based on the fact that a consumer may use his credit card for some time before he is first assessed a finance charge on his debt balance and should, therefore, not be held to have knowledge of terms he never saw. *See Goldman v. First Nat'l Bank of Chicago*, 532 F.2d 10 (7th Cir.) *cert. denied*, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976); *Baskin v. G. Fox & Co.*, 550 F.Supp. 64 (D.Conn.1982). Nevertheless, even in open-end credit accounts, the notion of continuing violation has not been endorsed. *Id.*

Defendant argues that plaintiff admitted that he was aware of any deficiencies with defendant's billing statement in May of 1984 and hence this suit should be time barred as it was not commenced until two years after that date. Although this might be true, it is not clear from the deposition excerpt submitted that the "problems" and "complaints" which plaintiff and defendant's counsel were discussing are the same problems and complaints which are the subject of this action. Thus, a factual question exists as to the state of plaintiff's knowledge prior to the year before this suit was commenced and on this basis alone defendant's motion is denied.

Even if it were to be assumed that plaintiff knew of the violations he has alleged prior to one year before he commenced this suit and, even if he also knew that the problems and complaints were violations of TILA,[3] a rule that he should therefor be time barred from bringing this action is unfounded and not required by the statute. Resolution of this issue is really a matter of balancing the interest of the creditor in properly limiting its exposure both to an initial suit and added damages, as provided under the Act versus the interest of the debtor in having the alleged non-compliance corrected and his resulting injuries remedied through compensation, as provided under the Act.[4] Inasmuch as the TILA is a remedial act designed to protect the consumer, it seems obvious that it is the latter which should be afforded the greater weight. A one-year limitation period which acted as a complete time bar, regardless of whether the creditor was continuing to violate the Act, would effectively insulate the creditor from suit and provide him with immunity as to all continuing violations. The better rule, and that which is adopted here, would be to allow the consumer to commence an action within one year from any violation which may occur, regardless of whether it is the first instance of that violation, but to restrict

---

3. Plaintiff argues that the consumer must know not just that there are problems with the form, but that such problems constitute TILA violations. In view of the holding herein, this issue need not be reached.

4. There is no controlling Supreme Court or Second Circuit authority on this issue.

any damages that might be awarded solely to those injuries which occurred within the year prior to the bringing of the suit. In this way, both the consumer and the creditor are afforded a measure of protection, yet the creditor is not provided immunity from suit and the consumer is not provided relief for the injuries he suffered while sleeping on his rights.

This rule is consistent with the Act. Section 1640(e) starts the limitation period running "from the date of the occurrence of the violation." It does not require an element of knowledge and, even though it refers to *the* violation rather than *a* violation, neither the statutory language, purpose or legislative history supports a narrow reading. Nor is the rule necessarily inconsistent with the rule adopted in closed-end transactions, declining to adopt a continuing violation theory. In closed-end transactions, the disclosures are made at the outset; in open-end transactions, there are new disclosures with each new charge to the account. *Schmidt*, 645 F.Supp. at 214. As this court noted previously, "Truth-in-Lending legislation is intended to increase competition among creditors and to protect consumers who use credit." *Id.* That purpose is not served by reading § 1640(e) to mean that consumers will not be protected unless they institute suit after their first awareness of creditors' violations of the Act.

A consumer should be allowed to seek damages for one year and relief from ongoing violations provided he does so within one year from either the first, the second, or the last such violation. As a matter of both fact and law, defendant's motion on this issue is denied.

## B. STANDING

■ Defendant also argues that plaintiff has no standing to pursue this matter. On February 15, 1985, plaintiff filed a bankruptcy petition from which he exempted consumer credit claims in the amount of $1000. He has already received $850 in consumer claim recoveries. Defendant argues that, when this amount is combined with the attorney fees which were received in the course of pursuing his consumer credit claims, the total amount exceeds $1000 and thus prevents plaintiff from being able to proceed with this action.

Although the weight of authority supports defendant's position that the right to attorney fees belongs to plaintiff, *see Freeman v. B. & B. Associates*, 790 F.2d 145 (D.C. Cir.1986); *Smith v. South Side Loan Co.*, 567 F.2d 306 (5th Cir.1978); *but see James v. Home Const. Co. of Mobile*, 689 F.2d 1357 (11th Cir.1982), those cases dealt with whether an attorney could maintain his own separate action after the case between the creditor and the consumer had been settled. They did not deal with whose account should be credited with the attorney fees awarded—the consumer's or the attorney's. The answer to that question requires an analysis of why attorney fees are awarded under § 1640. "The object of an award of attorney's fees is to compensate the attorney out of the assets of the violator so that the net damages recovery of the victim will not be diminished to pay his legal expenses." *In re Pine*, 705 F.2d 936, 939 (7th Cir.1983). "Allowance of attorney's fees in a successful [TILA] action makes legal representation available in a manner analogous to the contingent fee system." *Plant v. Blazer Fin. Serv., Inc. of Georgia*, 598 F.2d 1357, 1366 (5th Cir. 1979). Defendant's argument herein, much like the argument in *Plant* that the debtor's outstanding debt to the creditor should be offset by the amount paid to plaintiff's attorney for prosecuting his TILA claim, ignores the intent of the statute. "To allow a setoff would in effect relieve the creditors in violation of the Act of the attorney's fee expense in the case of an insolvent debtor. Such a result would thwart the statute's individual enforcement scheme and its remedial objective." *Id.* Attorney fees recovered are distinct from the consumer's recovery, which is preserved intact. The consumer did not receive the fee nor is he entitled to it, though the claim is made in his name. Plaintiff's $1000 bankruptcy exemption should not, therefore, be diminished by the amount paid to attorneys. As the exemption has not been exhausted here, plaintiff should

be allowed to pursue his action against defendant for its alleged violation of the Act.

### ALLEGED TILA VIOLATIONS

*1. Annual Percentage Rate and Finance Charge*

Plaintiff first claims that defendant has violated 15 U.S.C. § 1632(a) and 12 C.F.R. § 226.5(a) by failing to disclose on its monthly periodic billing statement the terms "Annual Percentage Rate" and "Finance Charge" in a conspicuous manner. Section 1632(a) states, in relevant part:

Information required by this subchapter shall be disclosed clearly and conspicuously, in accordance with regulations of the Board. The terms "annual percentage rate" and "finance charge" shall be disclosed more conspicuously than other terms, data, or information provided in connection with a transaction, except information relating to the identity of the creditor.

The Federal Reserve Board's implementing regulation, 12 C.F.R. § 226.5(a)(2), states:

The terms "finance charge" and "annual percentage rate," when required to be disclosed with a corresponding amount or percentage rate, shall be more conspicuous than any other required disclosure.

#### (a) Finance Charge

 Plaintiff argues that in assessing the conspicuousness of the term "Finance Charge" (located in the Account Summary Section), the court should consider the completed form and the language located under the heading "Activity Since Last Statement:"

LATE CHARGE
ADVANCES*FINANCE CHARGE*PERIODIC RATE
ATTENTION! YOUR ACCOUNT IS DELINQUENT TO AVOID AN ADDITIONAL LATE CHARGE, PLEASE PAY THE MINIMUM AMOUNT DUE IMMEDIATELY. IF PAID, THANK YOU.
YOUR ACCOUNT HAS BEEN REVIEWED AND YOUR CASH ADVANCE LIMIT WAS DECREASED TO $300. IF YOU HAVE ANY QUESTIONS, PLEASE CALL US.

Section 1632(a) requires that the term "Finance Charge" be more conspicuous "than other terms, data, or information provided in connection with a transaction." Thus, the statute requires that the completed periodic form, not the *un* completed periodic form, be considered in determining the conspicuousness of the specified terms. But § 1632(a) also notes that what is clear and conspicuous should be determined "in accordance with the regulations of the Board." Section 226.5(a)(2) of the regulations provides that conspicuousness should be determined in relation to the other required disclosure terms—not in relation to other language which may appear on the statement. *Grey v. European Health Spas, Inc.,* 428 F.Supp. 841, 843 (D.Conn. 1977). Thus, even though the computer typed language on the November 19, 1984 form, is of a print type and a pitch which is substantially larger than the "Finance Charge" print type and pitch and typed in capital letters versus the "Finance Charge" which is printed in upper and lower case letters, such does not provide support for plaintiff's argument. Indeed, the rationale for not extending the requirements of the statute to additional language is evident in this situation. It seems a plausible conclusion that the most important aspect of the November 19, 1984 statement is defendant's personal message or warning to plaintiff about the status of his account. It would seem somewhat illogical that a statute, which has as its core the requirement that a creditor deal fairly, honestly and openly with its debtor, would require that a message such as that reproduced above take a back seat to the notation of the "Finance Charge." The reason that the Act requires that "finance charge" and "annual percentage rate" be printed conspicuously is because it helps the consumer become "aware of the costs of credit and enabl[es] him to undertake comparative shopping for credit." *Id.* at 843; *see also Herrera v. First Northern Sav. & Loan Ass'n,* 805 F.2d 896, 900 (10th Cir.1986). The purpose of the Act is not served if,

after the consumer has contracted for credit, the creditor is penalized for warning him about the status of his account.

■ Plaintiff also argues that the term "Finance Charge" is less conspicuous than some of the headings on the reverse side of the form and thus constitutes a violation of the Act. However, none of the required disclosure terms under § 226.7 are the subject of those headings. Additionally, the headings, although of a larger print type, are printed in a light blue lettering on a white background and are arguably not as conspicuous as the term "Finance Charge." Finally, in comparison to the other required disclosure terms, "Finance Charge" is of a print size, pitch and degree of boldness which is the most conspicuous. On this issue, plaintiff's motion for summary judgment is denied.

### (b) Annual Percentage Rate

■ As to plaintiff's claims regarding the term "Annual Percentage Rate," it is necessary to consider § 226.7(d) and (g). Section 226.5(a)(2) provides that where the terms "Finance Charge" and "Annual Percentage Rate" are used under § 226.7(d) they need not be more conspicuous. *See* § 226.5(a)(2), n. 9; Federal Reserve Board Comments, Part 226, Supp. 1, at 684.[5] Section 226.7(d) provides for disclosure of periodic rates. A periodic rate is defined as "a rate of finance charge that is or may be imposed by a creditor on a balance for a day, week, month, or other subdivision of a year." 12 C.F.R. § 226.2(a)(21). Under § 226.7(d), a creditor must furnish the consumer with "[e]ach periodic rate that may be used to compute the finance charge, the range of balances to which it is applicable, and the corresponding annual percentage rate." (Footnotes omitted). Section 226.-7(g) requires that the annual percentage rate, as determined by § 226.14, be provided "[w]hen a finance charge is imposed during the billing cycle."

Defendant argues that in this case the "Annual Percentage Rate" need not be more conspicuous as it falls within the exception of note 9. Although the rationale

of note 9 is not explained in the regulations, it seems clear that it was not meant to supplant the requirement of § 226.5(a)(2). Section 226.7(d) refers to the *corresponding* annual percentage rate, *viz*, the rate which, when coupled with the periodic rate pursuant to some set mathematical formula, becomes the applicable finance charge. The Federal Reserve Board's comments are instructive:

In disclosing the annual percentage rate that corresponds to each periodic rate, the creditor may use "corresponding annual percentage rate," "nominal annual percentage rate," "corresponding nominal annual percentage rate," or similar phrases. [However,] [w]hen the corresponding rate is the same as the actual percentage rate ... required to be disclosed (§ 226.7(g)), the creditor need disclose only one annual percentage rate, but *must use the phrase "annual percentage rate."*

Federal Reserve Board Comment, Part 226, Supp. 1, at 691. Note 9 excepts the corresponding annual percentage rate simply because it is not of primary concern to the consumer. It is the finance charge and the annual percentage rate which are the terms which best enable the consumer to understand the cost of the credit he is undertaking and to undertake comparison shopping. *Grey*, 428 F.Supp. at 843. The individual figures which go into that calculation hardly provide a consumer with any meaningful basis to fulfill either of these two objectives.

The term "Annual Percentage Rate" is of the exact same type size, degree of boldness, and pitch as the terms "Periodic Rate" and "Nominal Annual Percentage Rate." It is not, therefore, more conspicuous and, as such, defendant has not complied with the Act.

Accordingly, plaintiff's motion as to the conspicuousness of the term "Annual Percentage Rate" is granted; plaintiff's motion as to the conspicuousness of the term "Finance Charge" is denied.

**5.** "Footnotes have the same legal effect as the text of the regulation." § 226.2(b)(4).

### 2. *Failure to Disclose Method of Calculation*

Plaintiff also alleges that defendant failed to disclose its method for determining the balance to which it applied the periodic rate. The credit statement contains the following:

**The Balance Subject to Finance Charge For Purchases:**

The Balance Subject to Finance Charge is the average of the daily balances outstanding at the close of business each day during the billing period, consisting of the Previous Balance, less Payments and Credits credited on or before that day, plus Purchases, Fees and Adjustments charged on or before that day.... There is no Finance Charge if we receive payment of your Previous Balance in full on or before the Payment Due Date shown on your previous statement.

(footnote omitted).

Plaintiff complains that this statement is defective in that it does not: (1) indicate that defendant calculates the finance charge, at least in part, by applying the periodic rate to the balance; (2) explain how the average daily balance is determined; (3) distinguish between average daily balance and daily balance; and (4) indicate how current transactions are treated. Section 1637(b)(7) requires a periodic billing statement setting forth "[t]he balance on which the finance charge was computed and a statement of how that balance was determined." *See also* 12 C.F.R. § 226.7(e). To help ensure that this requirement is complied with, the Federal Reserve Board has proposed model forms which, if followed, immunize the creditor from a claim that it has not complied with the Act. Official Staff Commentary, 12 C.F.R. Part 226, Supp. 1, Appendixes G & H; *see also* Official Staff Commentary, 12 C.F.R. § 226.6(a)(3). Use of the forms is not required, however. *Id.* The Model Form in this instance, provides:

We figure [a portion of] the finance charge on your account by applying the periodic rate to the "average daily balance" of your account (including current transactions). To get the "average daily balance" we take the beginning balance of your account each day, add any new [purchases/advances/loans], and subtract any payments or credits, [and unpaid finance charges]. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

Appendix G–1(d) (brackets in original).

#### (a) Insufficient Notation That Finance Charge is Calculated by Applying Periodic Rate to Average Daily Balance

■ Plaintiff's claim that the billing statement is deficient because it fails to note that the finance charge is calculated by applying the periodic rate to the average daily balance is without merit. Section 227.7(e) requires disclosure of the "amount of the balance to which a periodic rate was applied and an explanation of how that balance was determined." It does not require disclosure of how the finance rate is calculated because that information has already been provided in the initial disclosure statement. 12 C.F.R. 226.6(a)(3). Since it is the borrower's balance which changes from one periodic statement to the next, it is this calculation with which he should be provided in order to verify the creditor's information. Thus, although full compliance with Appendix G–1 might simplify reading a periodic statement, compliance with § 227.7(e) does not require the first sentence of the Model Form on periodic statements.

#### (b) Insufficient Description of "Average Daily Balance" Method

■ Defendant argues that it has adequately defined the "average daily balance." This is not so. Although the model form may seem somewhat simplistic, TILA recognized that not all borrowers are mathematicians. By combining the latter four sentences of Appendix G–1(d) into one sentence, defendant has complicated an otherwise straightforward explanation. An average borrower could read the clause beginning with "consisting" as modifying

"the average of the daily balances" or just one daily balance. It is unclear as to whether the adjustments are to be made to the previous balance or to a daily balance. So also is it unclear whether the adjustments are made to each day's balance. Indeed, defendant's memorandum explanation of its formula is clearer than is the actual formula. Defendant's Opposition Memorandum and Memorandum in Support of Motion for Summary Judgment at 18 ("This is the 'average daily balance' method. In order to determine the balance subject to finance charge the defendant on a daily basis adds or subtracts all debits and credits to or from the balance existing on the previous day, takes the closing balance at the end of the day and then averages the closing balances for the billing period."). Defendant's articulation does not explain, with adequate clarity, the method of calculating the balance to which the periodic rate is applied.

(c) Failure to Define "Daily Balance" and "Average Daily Balance"

As noted above, defendant's paraphrase of the Model Form has confused the explanation of the "average daily balance." Separate descriptions of "daily balance" and "average daily balance" would have clarified the formula.

(d) Failure to Reference the Phrase "(including current transactions)"

■ In relation to this claim, plaintiff appears to be arguing that defendant has failed to *emphasize* properly that the "average daily balance" includes current transactions. It is not disputing that defendant has failed to include this precise language. On this basis, plaintiff's claim has no merit. The presence of parentheticals in the Model does not necessarily mean that the Board intended that material to be emphasized, but perhaps merely separated from the rest of the sentence. Nevertheless, defendant's statement is unclear as to which day is referenced in the phrase "on or before that day," *viz*, is defendant referring to the last day of the billing period or to each day in that billing period? The lack of clarity exists whether the sentence is read in its entirety or in segments as it has here been analyzed.

3. *Failure to Adequately Disclose Address for Billing Inquiries*

Plaintiff lastly argues that defendant has violated 15 U.S.C. § 1637(b)(10) which requires a creditor to disclose the "address to be used by the creditor for the purpose of receiving billing inquiries from the obligor." In regard to this provision, the Board has made the following observation:

1. *Wording.* The periodic statement must contain the address for consumers to use in asserting billing errors under § 226.13. Since all disclosures must be "clear," the statement should indicate the general purpose for the address, although no elaborate explanation or particular wording is required.

2. *Telephone number.* A telephone number may be included, but the address for billing inquiries, which is the required disclosure, must be clear and conspicuous. One way to ensure that the address is clear and conspicuous is to include a precautionary instruction that telephoning will not preserve the consumer's billing error rights. Both the billing rights statements in Appendix G contain such a precautionary instruction, so that a creditor could, by including either of these statements with each periodic statement, ensure that the required address is provided in a clear and conspicuous manner.

Official Staff Commentary, 12 C.F.R. Part 226, Supp. 1, § 226.7(k), at 693.

■ Plaintiff claims that defendant's report is deficient in that it (1) lists two different addresses thus making it unclear as to which address is intended for billing inquiries; and (2) fails to provide a precautionary instruction about telephone conversations. On the reverse side of its periodic form, defendant states:

For Billing Error Inquiries: Write to Customer Service on a separate piece of paper at the address specified on the front of this statement to protect your rights under the law. You are not required to pay the amounts in dispute

until the dispute is resolved. However, you are still obligated to pay the amounts of your bill that are not in dispute.

On the front side of the completed statement, defendant states:

> For Customer Service call Mon.—Fri. 8 am to 8 pm, and Sat. 8 am to 6 pm

> 800–843–0777

P.O. Box 6500, Sioux Falls, SD 57117

Following the account summary, defendant also states:

> Send Payments to: P.O. Box 6001, Sioux Falls, S.D. 57188–6001.... If you have an amount in dispute, please see reverse side.

Quite clearly, as to plaintiff's first alleged error,—that defendant's inclusion of two addresses is confusing—there is no basis for liability. Defendant adequately explains the difference between the two addresses; one for payment, the other for customer service. The form is not unclear in this regard.

 As to plaintiff's second alleged error, that defendant has not provided a precautionary instruction about telephone calls, defendant has not complied. Both the regulation and the Model Forms, *see* 12 C.F.R. Part 226, App. G–3 and G–4, contain the precautionary instruction that inquiries made by telephone will not preserve the consumer's rights. Defendant correctly argues that a telephone number is not precluded by the Act and the precautionary instruction in the Model Form is merely a suggestion, not a requirement. However, although the precautionary instruction might only be a suggestion, it is intended to ensure that the required statement—the address—is both clear and conspicuous. Defendant's customers are told how to make their inquiries to defendant in writing, but the phone number is provided implicitly as an alternative means of inquiry. The print type, degree of boldness and overall conspicuousness of both methods are identical. In fact, the telephone number is actually listed first. In presentation, both methods are given the same weight even though the address is required to be

clear and conspicuous and only written inquiries which actually protects the consumer's rights. By presenting both methods of contact, in parity, it is at least implicit that either method of communication is sufficient. Absent a warning of the required writing, the implication creates confusion.

## CONCLUSION

Accordingly, plaintiff's motion for summary judgment on the issue of liability is:

(1) granted as to the conspicuousness of the term "Annual Percentage Rate;" denied as to the term "Finance Charge;"

(2) denied as to the claim of failure to note that the finance charge is calculated by applying the periodic rate to the average daily balance; granted as to defendant's insufficient description of the average daily balance method; granted as to the failure to define "daily balance" and average daily balance; and denied on defendant's alleged failure to emphasize; and

(3) denied as to the claimed confusion relating to two addresses; granted as to the failure to provide a precautionary instruction and/or failure to make the billing address clear and conspicuous.

Defendant's cross-motion for summary judgment is denied.

Both parties shall report in writing on or before December 4, 1987, on their intentions regarding damages, including the claim for attorney fees and whether a settlement conference would prove helpful.

SO ORDERED.

## RULING ON MOTION TO RECONSIDER

Defendant has requested reconsideration of the Ruling on Cross–Motions for Summary Judgment with respect to the issue of whether it should be bound to include on its periodic statement the precautionary language that making inquiries via telephone will not preserve a consumer's error billing rights. Defendant's motion to reconsider is granted and upon reconsideration the court adheres to its previous ruling.

Defendant submits that it provides the precautionary language in its Initial Disclosure Statement and in its Annual Billing Rights Statement and that the law does not require it to repeat the language in its periodic statements. As noted in the Ruling at 696, defendant is correct in arguing that, as a matter of statutory law, the precautionary language is not required to be included in the periodic statement. However, the law does require that the address used for purposes of receiving billing inquiries be clear and conspicuous. 15 U.S.C. § 1632(a); 12 C.F.R. § 226.5(a). As the court noted, as a matter of fact, defendant's form is not a model of clarity because it seemingly places calling and writing on the same footing. Although it notes on the back of the form that a consumer should write to preserve his rights under the law, it invites telephone inquiries on the front of the form. In so doing, it lessens the clarity and conspicuousness of the instruction on the back of the form. Indeed, it is in relation to the requirement of clarity and conspicuousness of the billing error address that led to the Federal Reserve Board to suggest that the precautionary instruction be included in each periodic statement. Official Staff Commentary, 12 C.f.R. Part 226, Supp. 1, § 226.7(k), at 693.

Accordingly, upon reconsideration, the court adheres to its previous ruling. Although the precautionary statement might not be required in all situations, based on the current record and design of defendant's periodic statement, there is no question but that it is required in order to ensure the clarity and conspicuousness of the bill error address.

SO ORDERED.